664 So.2d 1192 (1995)
Richard & Bunnie MORRIS
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION, State of Louisiana, Department of Public Safety, Forest Kieff, Jr., Ray J. Ordoyne, Old Hickory Insurance Co. and Aetna Casualty & Surety Company.
No. 94 CA 2545.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
As Corrected on Limited Grant of Rehearing November 15, 1995.[*]
*1194 Danny J. Lirette, Houma, David J. Shea, Houma, for Plaintiffs-Appellees, Richard & Bunnie Morris.
Scotty E. Chabert, Cutoff, for Appellant, Dept. of Transportation.
Charles Schutte, Jr., Baton Rouge, for Security National.
William V. Dodd, Houma, for Terrebonne Parish Sheriff's Office.
Dana Ortego, Houma, for Lafourche Parish Sheriff's Office.
Lloyd Bourgeois, Labadieville, for LIGA (Old Hickory Casualty Ins. Co. Forest Kieff, Jr.)
Before CARTER and PITCHER, JJ., and CRAIN[1] J. Pro Tem.
HILLARY J. CRAIN, Judge Pro Tem.
Beginning Friday, December 22, 1989, Terrebonne and Lafourche Parishes were crippled by a severe ice and snow storm. This was unusually severe weather for the geographic area. By December 24th, the ice and snow had begun to melt. On the morning of December 25, 1989, plaintiff Richard Morris was traveling westbound on the Bourg-Larose highway (LA 24) when he observed an automobile driven by Curtis Gregory which was traveling east on the highway. He saw Gregory's vehicle skid through ice on the road surface. Gregory lost control, the vehicle went into a spin and came to a stop in the tree line off the eastbound lane. Morris stopped to assist Gregory and his family and to help Gregory get his vehicle back onto the highway. Morris pulled his 1984 Isuzu pickup truck across the highway onto the eastbound shoulder. He backed the rear of his truck approximately two or three feet from the front bumper of Gregory's vehicle. Both vehicles were completely off the roadway. He got out of his truck, retrieved a tow chain and attached the chain to the frame of the Gregory vehicle.
Morris began to wrap the chain around his trailer hitch when an approaching vehicle driven by Forest Kieff skidded on the ice on the road surface, crossed the center line of the highway and struck an oncoming vehicle driven by Ray Ordoyne. The impact pushed Ordoyne's vehicle into Morris' truck. At the time of impact Morris was standing between his pickup truck and the Gregory vehicle which resulted in Morris' being pinned between the two vehicles. Morris suffered personal injuries as a result of this accident.
Morris instituted this personal injury suit against the Department of Transportation and Development (DOTD), the Department of Public Safety (DPS), Forest Kieff, Jr., Old Hickory Casualty Insurance Co. (Kieff's insurer), Ray J. Ordoyne, Aetna Insurance Co. (Ordoyne's insurer), Security National Insurance Co. (Gregory's insurer), Liberty Mutual Insurance Co. (Morris' UM insurer), the Terrebonne Parish Sheriff's Office, the sheriff of *1195 Terrebonne Parish, the Lafourche Parish Sheriff's Office and the sheriff of Lafourche Parish. Numerous third party demands and cross claims were filed by the parties.
After a bench trial on the merits, judgment was rendered and signed on February 7, 1994.[2] The judgment assessed 20% fault to DOTD; 60% to Kieff; and 20% to "Gregory-UM." DOTD and Security filed motions for new trial which were granted. The February 7, 1994 judgment was vacated in part and on August 11, 1994, the court rendered judgment assessing 40% fault to DOTD and 60% to Kieff. From this judgment DOTD appealed alleging six assignments of error:
"1). The trial court manifestly erred by ignoring overwhelming evidence presented by the defendant, DOTD, that it did not receive the required notice as provided by L.R.S. 9:2800 which would render it liable for a thing under its control.
2). The trial court manifestly erred in ruling that the plaintiff was free from fault in this accident.
3). The trial court manifestly erred in ruling that the defendant, DOTD, was not absolved from any liability as per the defense of Act of God.
4). The trial court manifestly erred in ruling in that the defendant, DOTD, actions or in actions were a cause in fact of said accident.
5). The trial court abused its discretion in awarding $160,000.00 in lost wages to the plaintiff, Richard Morris.
6). The trial court erred in ruling that the defendant, DOTD, was not absolved from liability as per the fault of a third party."
Plaintiff answered the appeal and assigned as error quantum and the percentage of fault assessed to DOTD.

FAULT OF DOTD
In the first, third and sixth assignments of error DOTD contends that the trial court erred in finding actionable fault on the part of DOTD.
Although the trial judge mentioned both negligence and strict liability in his reasons for judgment, apparently he assessed liability to DOTD based on negligence. La.C.C. art. 2315. We find that to be the correct approach in this case. Liability can ordinarily be based on negligence under La.C.C. art. 2315 or strict liability under La.C.C. art. 2317. The only difference in these theories is the necessity of proving prior knowledge of the owner or custodian under La.C.C. art. 2315. That difference was eliminated by the legislature in the enactment of La.R.S. 9:2800(B), which requires proof of knowledge of a public entity owner or custodian under either theory. However, our decision in Rhodes v. State of Louisiana, Department of Transportation and Development, Department of Public Safety and Corrections, 94-1758 (La.App. 1st Cir. 5/5/95), 656 So.2d 650, holding La. 9:2800(B) unconstitutional, eliminates again the necessity for proving prior knowledge on the part of the public entity owner or custodian for purposes of 2317 liability.
In any event, La.C.C. art. 2317 liability requires the existence of a "defect".
A `defect' is some flaw or fault existing or inherent in the thing itself. The temporary existence of other objects which may constitute a hazard on the roadway does not constitute a defect in the roadway.
Nicholes v. St. Helena Parish Police Jury, 604 So.2d 1023, 1027 (La.App. 1st Cir.), writ denied, 605 So.2d 1378 (La.1992). (Emphasis added). The cause of the accident in this case was ice on the roadway. That condition does not constitute a defect in the roadway. Consequently, liability must be based on La. C.C. art. 2315 with its attendant requirement of actual or constructive knowledge.
"The state owes a duty to the motoring public to maintain highways in a reasonably safe condition and to remedy conditions which make a roadway unsafe." Gaspard v. State Department of Transportation and Development, 596 So.2d 336, 338 (La. App. 3rd Cir.), writ denied, 600 So.2d 664 *1196 (La.1992). For the state to be liable for a hazardous or dangerous condition on a roadway, it must be shown that the state had actual or constructive knowledge of the condition. It must further be shown that the state had sufficient opportunity to remedy the situation or to warn motorists of its presence, and failed to do so. Naylor v. La. Dept. of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 429 So.2d 127, 134 (La.1983). "Constructive notice" in negligence cases exists when the defect or condition has existed for such a period of time that it would have been discovered and repaired had the public body exercised reasonable care. Lutz v. City of Shreveport, 25-801 (La.App. 2d Cir. 5/4/94), 637 So.2d 636, 639, writ denied, 94-1487 (La. 9/23/94), 642 So.2d 1294.
In written reasons for judgment the trial court stated:
"DOTD followed its procedures at the onset of this ice and snow storm. Priority areas were maintained and the crews were out in full force the first day of the storm. As the brunt of the storm subsided the crews went on stand-by responding to emergency calls. Louisiana State Police reported all hazardous road conditions. By Saturday and certainly Sunday most of the roads were beginning to clear. DOTD cannot be held responsible for the conditions of ice and snow on every roadway during the first hours of this storm, but certainly three days after its inception, when most roads were clear, could they take care of the few remaining problem spots. At least two accidents occurred on the Bourg-Larose Highway on the 23rd or 24th. The State Troopers were aware of the hazardous conditions and reported same. DOTD had one truck in each parish and had aggregate stacked in the yard.[4] These trucks would respond to calls, yet there was no one in either parish office to receive these calls. Some calls were made to the men's homes and some were routed through the East Park Bridge. Nevertheless, neither truck had radio communication.
Accidents were being reported on the Bourg-Larose highway, trucks were on the road with an ample supply of aggregate and no one was in the office to receive emergency calls. A large volume of ice and snow had melted and DOTD had the power and material to care for the remaining icy patches of roadway. This very condition of having parts of roadways clear and coming on isolated patches of ice is in itself an extremely dangerous condition and the Department was not under the burden on the 24th or 25th that it had been on the 22nd of December, 1989. Therefore ... this Court finds that DOTD is liable for the condition of that roadway at the time the accident occurred."
Section 1.37 of the Maintenance Manual prepared by the Maintenance and Construction Division of DOTD enumerates the precautions which should be taken by each DOTD district administrator in the event of potential problems with snow and ice:
"A. Locate and make ready all emergency signs.
B. Stock up a moderate supply of rock salt or calcium chloride and locate the source of additional supplies.
C. Verify the availability of such items as coarse sand, flares, barricades, etc.
D. Have loading equipment available at material stockpiles.
E. Advise foremen, in detail, the ... exact part they will handle if storm does materialize.
F. Make arrangementsto keep radio base station on air continuously during the emergency."
It is uncontested that at the time of the accident the Bourg-Larose highway was in the care and custody of DOTD. On December 22nd through the 24th the entire parish and most of the road surfaces and bridges were covered with ice and snow which made it extremely hazardous for the motoring public. By the 24th, the ice had begun to melt, and most of the roads and bridges in the area were passable. However, it is undisputed that there was a large quantity *1197 of ice on the roadway at the scene of the accident which was probably due to the overhanging trees which shaded this section of the highway. It is also uncontested that, before the storm arrived, the parish DOTD offices were equipped with 50 to 60 yards of aggregate for use during the storm. Approximately 40 to 50 yards of aggregate remained unused after the storm.
Captain Mark Zeringue, Commander of Troop C of the Louisiana State Police which encompasses Terrebonne and Lafourche Parishes, testified that there was a communication problem with DOTD during the storm and that he had been upset with the lack of response of DOTD during the storm. He better understood the problem after meeting with DOTD representatives after the storm. He explained: "[I]t was mostly communication problems that they were, I did not know the shortage of manpower they had or equipment, and what their primary goals were."
DOTD policy in Terrebonne and Lafourche Parishes during the ice and snow storm was to load available dump trucks with aggregate, park them in a sheltered area and notify personnel that they were on standby for emergency duty. The primary goal upon arrival of the storm was for DOTD personnel to do their best to keep the main thoroughfares open for as long as possible. The main thoroughfares in order of importance were: major river and stream crossings, elevated structures, the approaches to these structures and major arteries. The major arteries in the area, as designated by DOTD, are U.S. 90, U.S. 90 relocated, LA 24 North out of Houma to Thibodaux, LA 1 in its entirety, the entire interstate system, and the West Bank Expressway. The Bourg-Larose Highway was not a high priority roadway.
After initially spreading aggregate on the area bridges on Friday, December 22nd DOTD did not patrol the roadways searching for dangerous conditions. Instead, the decision was made to man the telephones and respond to calls from the state police, sheriff's department and general public alerting DOTD to dangerous conditions. DOTD would respond to the calls by sending employees in dump trucks to spread aggregate over the iced areas. The problem with this policy is that after regular working hours on December 22nd, there was no one in the local offices to man the telephones for incoming calls regarding hazardous conditions. Further, the dump trucks were not equipped with radios or telephones. Thus, any communication with DOTD after Friday, December 22nd was either by calling directly to the superintendent's home or by calling the East Park Bridge. The bridge tender then had to call the parish superintendent at home. If the superintendent was not at home and was by chance responding to a call, the message was left with the superintendent's wife. When the superintendent called in to his home, his wife would relay the message. Sometimes the state police would have to drive around the local roads looking for the dump truck at an emergency work site. This sometimes resulted in delays in communication of hazardous conditions to DOTD.
We realize that there is no way that DOTD would have the resources to continually monitor and spread aggregate over every foot of highway within its custody during the entire Christmas weekend. However, by the 25th, conditions had improved on the roadways. This stretch of highway had been the scene of several accidents over the weekend. DOTD could have at least attempted to monitor the roadways searching for the remaining patches of ice which presented a hazard to the motoring public. DOTD did not even attempt to put to work all of its available manpower, use all available trucks and spread all available aggregate. The district was actually manned by two or three employees using one truck and spreading no more than 10 of the available 50 or 60 yards of aggregate. Further, communication with DOTD about problem areas spotted by the state police was virtually non-existent due to the lack of radios in the one truck being used in the entire district. This was amplified by the lack of personnel monitoring the district telephones during the storm.
After careful review of the record, we conclude the trial court was not manifestly erroneous in finding that DOTD had actual or constructive notice of the hazardous condition. It had sufficient opportunity to remedy *1198 the situation but failed to do so. These actions constituted a breach of the duty owed to the motoring public; plaintiff was within the ambit of protection of the duty; and the actions or inactions of DOTD in failing to either correct or warn against the defect was a cause of the accident. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

FAULT OF PLAINTIFF
In the second assignment of error, DOTD contends the trial court erred in finding no fault on the part of plaintiff. DOTD argues that plaintiff knew the road was dangerous due to the presence of the ice and did nothing to warn oncoming cars of the ice. Further, plaintiff placed himself in danger by choosing to position himself between plaintiff's and Gregory's vehicle.
After careful review of the record, we find the trial court was not manifestly erroneous in refusing to assess fault to Morris. Both the Morris and Gregory vehicles were pulled off the roadway. Morris was simply acting as a good samaritan when, through the combined fault of DOTD and the negligence of Kieff, he was injured. This assignment is without merit.

QUANTUM
The trial court awarded the sum of $160,000 in future lost wages. In their second assignment of error, plaintiffs allege the award for loss of future earning capacity should be increased. Conversely, in DOTD's second assignment of error, DOTD alleges no award should have been made for loss of future earnings.
An award for loss of future earning capacity is not predicated only on the difference between a person's earnings before and after the disabling injury. It encompasses the loss of the person's earning potential or capacity, the loss or reduction of a person's capability to do that for which he is equipped by nature, training, and experience and for which he may be recompensed. Thibodeaux v. USAA Casualty Ins. Co., 93-2238 (La.App. 1st Cir. 11/10/94), 647 So.2d 351. An award for loss of earning capacity is inherently speculative and cannot always be calculated with mathematical certainty. Thus, the trier of fact must exercise sound discretion in making the award, in light of the facts and circumstances. Henry v. National Union Fire Insurance Co., 542 So.2d 102 (La.App. 1st Cir.), writs denied, 544 So.2d 405 (La.1989). Great deference should be given to the trial court in reviewing an award for loss of earning capacity and it should not be set aside absent an abuse of discretion. Thibodeaux v. USAA Casualty Ins. Co., 93-2238 (La.App. 1st Cir. 11/10/94), 647 So.2d at 360.
Mr. Morris was employed as a Field Operator II with UNOCAL, an oilfield related industry, at the time of the accident and earned $41,828 in 1989. The job of field operator requires physical fitness and the ability to maneuver on the oil platforms as well as mounting and dismounting from the platforms. He worked seven days on and seven off and was able to work a lot of overtime. He did not have an engineering degree and the bulk of his work experience was on the oil rigs. The evidence was overwhelming that Mr. Morris was an excellent worker who would most certainly have been promoted within the company. The next promotion would have been to the position of Field Operator I which pays $20.20 per hour with great potential for overtime. Earl J. Guidry, an Operator I, testified that he earned $66,000 (including overtime) in 1993. At time of trial a Field Operator II was paid $17.80 an hour with potential for overtime.
It is uncontroverted that Mr. Morris will never be able to return to field work. After the injury, he was given a desk job with UNOCAL as an Environmental Supervisor, working five days on and two days off but on twenty four hour call, compared to his former work schedule of seven on and seven off. He must work out of Lafayette and stays there on weekdays. He earned approximately $42,000 in 1992, which is approximately what he earned prior to the accident but less than he would be capable of earning after promotion to an Operator I. There is no potential for overtime pay and he has virtually no hope for promotion with a desk job. Any further promotions for "desk work" would require an engineering degree. Clearly, *1199 his earning potential has been hampered by the injury.
After review of the record, we conclude the trial court's award of $160,000 was not an abuse of discretion. These assignments are without merit.

APPORTIONMENT OF FAULT
Plaintiffs allege as error the trial court's apportionment of fault, contending that the majority of fault should have been apportioned to DOTD. Plaintiffs contend the fault allocated to Kieff should be reduced to 10%; whereas the fault allocated to DOTD should be increased to 90%.
A motorist has the duty to drive prudently. This includes the duty to maintain control of his vehicle and to maintain a proper lookout for hazards. Paige v. Commercial Union Ins. Co., 512 So.2d 507 (La. App. 3d Cir.), writ denied, 513 So.2d 823 (La.1987). The evidence indicates that Kieff was driving approximately 40 miles per hour at the time he lost control of his vehicle. This was below the posted speed limit. Although several motorists skidded on the ice at that location, neither Morris nor Ordoyne did. They testified that they were driving slowly and carefully in response to the potentially hazardous conditions.
Apportionment of fault among tortfeasors is a factual determination which should not be reversed unless manifestly erroneous. Motton v. Travelers Insurance Co., 484 So.2d 816 (La.App. 1st Cir.1986). Considering the evidence and the factors set out in Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985), we conclude the apportionment of fault made by the trial court is not manifestly erroneous.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal in the sum of $2,814.26 are assessed equally between DOTD and plaintiffs.
AFFIRMED.
NOTES
[*] Rehearing granted for the limited purpose of eliminating footnote number 3.
[1] Honorable Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Liberty, Ordoyne, Aetna, the Lafourche Parish Sheriff's Office, the Lafourche Parish Sheriff, the Terrebonne Parish Sheriff's Office and the Terrebonne Parish Sheriff were subsequently dismissed from this action.
[4] Actually, DOTD had as many as five or six trucks in the parish which were operational. However, only one of the trucks was loaded with aggregate and used during the weekend.