857 So.2d 535 (2003)
Michael MURPHREE and Robin Corona
v.
Richard DAIGLE, State of Louisiana, Through the Department of Transportation and Development and Parish of Ascension.
No. 2002 CA 1935.
Court of Appeal of Louisiana, First Circuit.
September 26, 2003.
*536 A.J. Rebennack, Stephen C. Juan, New Orleans, for Plaintiff-Appellee Tristem Murphree.
Richard Daigle, Prairieville, In Proper Person.
John H. Ayres, III, Assistant Attorney General, Baton Rouge, for Defendant-Appellant State of Louisiana, through the Department of Transportation and Development.
Before: PARRO and McDONALD, JJ., and IAN W. CLAIBORNE,[1] J. Pro Tem.
PARRO, J.
The State of Louisiana, through the Department of Transportation and Development (DOTD) appeals a judgment finding it was 80% at fault for damages due to a motorcycle accident that occurred when a tree limb fell onto a state highway in the path of the bike, causing the driver, Michael Murphree, and his passenger, Robin Corona, to be thrown from the vehicle and to suffer personal injuries. For the following reasons, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND
On July 11, 1998, at approximately 2:00 a.m., Murphree and Corona left the Hole Shot Saloon in Ascension Parish, where both had been drinking for several hours, and went riding on his motorcycle on Highway 621. They were traveling about 45-50 miles per hour when a large branch from a mature water oak tree fell onto the road just in front of them, leaving Murphree no chance to stop or avoid hitting it. As a result of the collision, he and Corona were thrown from the motorcycle. Although Corona was not severely injured, Murphree sustained brain damage for which surgery was required; he lost the senses of taste and smell, lost hearing in his right ear, broke several ribs, smashed his left wrist, and injured his right eye. His medical expenses totaled $75,598.89.
Highway 621 is a state highway, and therefore, is maintained by DOTD. The tree from which the limb fell is not growing in the state's right-of-way, but is situated with most or all of its trunk on private property belonging to Richard Daigle. However, some of its branches do hang over the highway. The branch that fell was rotten, although the rest of the tree appeared to be in good health, with no observable insect damage, lightning damage, dead leaves, bark damage, or dead branches.
Murphree and Corona eventually filed *537 suit against DOTD and Daigle.[2] While the suit was pending, Murphree died from unrelated causes and his son, Tristem Murphree, was substituted as plaintiff. Shortly before trial, the plaintiffs stipulated that their damages did not exceed $50,000, so the case went to a bench trial instead of a jury trial. After trial on the merits, finding Murphree's damages were in excess of $675,000, but recognizing the $50,000 stipulation, the court entered judgment in the amount of $50,000 against DOTD, finding Murphree was 20% at fault and DOTD was 80% at fault in the accident.[3]
DOTD appeals, assigning the following errors in the trial court's judgment. First, DOTD contends the court erred in finding DOTD had notice or constructive notice of an unreasonably dangerous condition, given the fact that plaintiffs' expert admitted the tree from which the branch fell appeared outwardly healthy to cursory visual inspection. Second, DOTD claims the court erred in finding the tree was unreasonably dangerous, simply because of its inherent characteristics as a mature water oak. Finally, DOTD argues in the alternative that, if the tree did present an unreasonably dangerous condition, the court erred in failing to apportion some degree of fault to the landowner on whose property the tree was situated.

APPLICABLE LAW
When trees are outside the right-of-way, they are outside the ownership or "garde" of the entity charged with maintaining the highway. Accordingly, strict liability under Louisiana Civil Code article 2317 is inapplicable and simple negligence principles apply. See also LSA-C.C. art. 2317.1. Under those principles, to establish a breach of DOTD's duty to maintain safety for the motoring public, a plaintiff must show that a hazardous condition existed and that DOTD had actual or constructive knowledge of said condition, but failed to take corrective action within a reasonable time. See Briggs v. Hartford Ins. Co., 532 So.2d 1154, 1156 (La.1988). "Constructive notice" in negligence cases exists when the defect or condition has existed for such a period of time that it would have been discovered and repaired had the public body exercised reasonable care. Lutz v. City of Shreveport, 25,801 (La.App. 2nd Cir.5/4/94), 637 So.2d 636, 639, writ denied, 94-1487 (La.9/23/94), 642 So.2d 1294; Morris v. State, Dept. of Transp., 94-2545 (La.App. 1st Cir.10/6/95), 664 So.2d 1192, 1196, writ denied, 95-2982 (La.2/9/96), 667 So.2d 537.
The ultimate determination of whether a condition creates an unreasonable risk of harm is subject to review on appeal under the manifest error standard. Under this standard, the trial court's findings are reversible only when there is no reasonable factual basis for the conclusions, or if they are clearly wrong. Dennis v. The Finish Line, Inc., 99-1413 (La. App. 1st Cir.12/22/00), 781 So.2d 12, 21, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319. Similarly, the question of whether or not DOTD had actual or constructive notice of a hazardous condition creating a risk for motorists is a factual issue and is reviewed under the manifest error standard. See Brown v. Louisiana Indem. Co., 97-1344 (La.3/4/98), 707 So.2d 1240, 1244. On the other hand, the existence *538 of a duty is an issue of law which is determined by the court. Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229, 233. On this issue, the inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his claim. Bowman v. City of Baton Rouge/Parish of East Baton Rouge, 02-1376 (La.App. 1st Cir.5/9/03), 849 So.2d 622, 627.

ANALYSIS
The trial court's written reasons for judgment in this case provide the following basis for its decision to impose liability on DOTD:
As per the testimony of Plaintiffs' expert, Dr. Todd Shupe, the branch at issue was rotten for at least two (2) years prior to Plaintiff Michael Murphree's accident. Shupe believes that a reasonably prudent DOTD inspector should have seen the generalized condition of the tree and noticed that it was potentially a problem and that the tree needed trimming and/or removal. Shupe opined that water oaks are prone to rotting and falling branches more so than other types of trees. The State had a duty to recognize this especially since the trees and their branches offshoot the highways of Ascension Parish. Shupe believes that water oaks should not be planted next to a roadway because of their propensity to rot and fall.
* * *
The duty of DOTD is to observe and remove trees that are dead or leaning or otherwise appear defective by general observation.
After reviewing the record in this case, we conclude that the supreme court's discussion in the Thompson case of the state's potential liability under these circumstances mandates reversal of the judgment in this case. See Thompson v. State, 97-0293 (La.10/31/97), 701 So.2d 952. In Thompson, an accident occurred when a tree limb hanging down into the plaintiff's lane of travel contacted his windshield, causing him to lose control of his vehicle. In analyzing the findings of the district court, the supreme court noted that the record fully supported the finding that DOTD had notice that tree limbs extended over the highway. However, the supreme court added that the district court did not find, nor did the record support a finding, that DOTD had actual or constructive notice of the limb that was hanging down into the southbound lane, which the Thompson vehicle struck. Additionally, the court stated:
Furthermore, there is no evidence that the limb which contributed to this accident was noticeable or discoverable prior to the accident as a limb about to sag down into the lane of travel. Therefore, given the trial court's finding that the state had notice of only the living limbs overhanging the road, the trial court determined the living limbs themselves to be a defect and he also found that the state has a duty to trim and remove all branches which extend over the highway. Under the trial court's ruling, in order to protect against the risk posed by this particular limb the state would have had to have removed all of the overhanging limbs.
The duty imposed by the trial court that the state should remove all limbs which might fall on the roadis an incorrect application of the law.
Thompson, 701 So.2d at 955.
The court further stated, "Conversely, where an object or hazard has entered the path of traffic or manifests some indication that it is likely to fall into the roadway, then DOTD will have a duty to remove such hazard providing it has notice." *539 Thompson, 701 So.2d at 956 n. 3 (emphasis added). Noting that DOTD had been held liable in some cases for its failure to discover and remove dead trees beyond its right of way, the court explained:
In these cases the risk to be protected against is a tree falling onto a highway and obstructing it or striking a passing vehicle. The state's duty to protect against this risk is to inspect for dead trees and remove them within a reasonable time. The state is not required to inspect for all trees which could fall on the road and remove them simply because they have the potential to fall onto the road.
Similarly, the state's duty with respect to the limbs was to inspect them, as they inspect roadside trees, by looking for dead limbs or those which manifest some other indication that they are likely to fall into the roadway and to remove such limbs within a reasonable time. This court has rejected a finding of liability against the state where a dead tree which fell onto a highway was not discovered by the DOTD due to the presence of other trees which obscured the view of the dead tree and the presence of bark on the lower portion of the trunk. Lewis v. State Through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311.
Thompson, 701 So.2d at 956.
The case we are reviewing involves not just the risk presented by overhanging limbs, as in the Thompson case, but also the other situation discussed in that case of the risk of a limb falling onto the highway directly in the path of an oncoming vehicle. As noted by the court in Thompson, DOTD's duty in that circumstance is to inspect for dead trees or dead limbs "or those which manifest some other indication that they are likely to fall into the roadway" and remove them within a reasonable time. Although the trial court in this case correctly described that duty, "to observe and remove trees that are dead or leaning or otherwise appear defective by general observation," our review of the record does not reveal a factual basis for the court's conclusion that DOTD breached its duty.
The record clearly shows that this branch was not lying in the road for any period of time before Murphree hit it. Murphree testified in his deposition that he was riding his motorcycle down Highway 621 when:
[i]t looked to me a tree just come out of nowhere, fell down right in front of me.... I saw the tree coming down, a limb or whatever it was. I hit my brakes and I hit the tree. It was approximately eight to ten feet in front of me when it fell.
There was no time for Murphree to avoid hitting the branch and certainly no time for DOTD to have actual or constructive notice of its presence and remove it. Therefore, in order to impose liability on DOTD, the record must show that the defective condition of the tree or limb had existed for such a period of time that it would have been discovered and remedied if DOTD had exercised reasonable care.
Albert Shields, Jr., a parish highway maintenance superintendent for DOTD, whose responsibility included the section of Highway 621 where the accident occurred, testified that he inspected that highway at least once a week for anything that would be detrimental to the safety of the motoring public, including such things as potholes, dips in the roadway, low shoulders, rotten trees, or bumps in the highway. With reference to the condition of roadside trees, he said he visually inspected them while driving about 25 miles per hour along the shoulder, looking for rotten leaves, a rotten tree trunk, or a *540 canopy that was not green when it should have been. If he saw anything like that, he would stop, get out of his truck, and thoroughly inspect the tree from beneath it. If he confirmed there was a problem, he took the necessary steps to have dead limbs pruned or the entire tree removed. He would make a similar inspection if a complaint came in to DOTD concerning a particular tree. Shields stated there was no prior complaint concerning the tree from which the limb fell in this case. He said he knew that water oaks tended to rot from the inside, but his visual inspection of water oaks was the same as with any other tree.
Warren E. Peters testified as an expert in forestry on behalf of DOTD. He testified that several years after the accident, in addition to making a careful visual inspection of the tree from which the branch had fallen, he took a hammer and beat on the trunk to determine from the sound whether there was any significant interior decay in the tree, and detected none. He said there was no insect infestation and no visible rot, and the canopy of the tree was in pretty good shape. Peters acknowledged that a water oak could appear healthy on the outside, but be rotten on the inside, and that once they reach about 50 years old, like this tree, water oaks have a greater propensity to drop limbs than other trees. However, Peters emphasized that the water oak is one of the most common hardwood or deciduous trees in the state of Louisiana and, short of cutting all roadside trees, there was no practical way to eliminate water oaks from the Louisiana roadsides.
Todd Shupe testified on behalf of the plaintiffs as an expert in forestry and wood science. He stated that water oaks are prone to rotting and falling branches, and estimated that it would have taken at least two years of decay for the branch that fell to be in such a condition. However, he also said the fact that the branch fell indicates "either the wind was extremely high or the severity of the decay was extremely great or a combination of the two." He opined that it would be a bad idea to have a water oak situated where its branches protruded over the road, because of the water oak's propensity for decay when the tree reaches advanced age. But he admitted that even when he conducted his inspection of the tree, he saw no rotten places in the tree bark, no visible external rot, and no insect infestation. In addition, the canopy and trunk of the tree appeared healthy.
Shupe's comments are within his area of expertise and were properly accepted and relied upon by the court as expert opinion on the subject. However, the court summarized Shupe's opinion with the following comment:
Shupe believes that a reasonably prudent DOTD inspector should have seen the generalized condition of the tree and noticed that it was potentially a problem and that the tree needed trimming and/or removal.
There are some problems with this observation. First, Shupe did not actually say this. He did not say that a reasonably prudent DOTD inspector should have noticed something in the generalized condition of this particular tree that would require such attention. On the contrary, he said that other than the obviously rotten condition that was exposed on the stub of the limb that fell, even his on-the-ground careful visual inspection revealed a generally healthy tree. In all of Shupe's testimony, the closest he got to making such a statement was that he would not be comfortable rendering an opinion about a mature water oak unless he got out, looked at it, walked around, touched it, and stood up under itand "it would [behoove] the individual based on the species, the size, *541 and the location of that tree to get out of the vehicle and do some on-the-ground inspection of that tree." Shupe's comments suggest that there is a higher inspection duty, based on the species of tree involved, rather than on anything that might be visually apparent when driving slowly alongside the road.
We believe the trial court's conclusion in this case implicitly imposed a higher degree of duty on DOTD than is reasonable or has been required by the supreme court. The court's decision in this case allows only three possible courses of action for DOTD to avoid potential liability. The first is to remove all mature water oaks from the roadsides, simply because they have the potential to shed branches. The supreme court rejected this in Thompson, when it said "[t]he state is not required to inspect for all trees which could fall on the road and remove them simply because they have the potential to fall onto the road." Thompson, 701 So.2d at 956. The second alternative would be to remove all overhanging branches, a requirement that was also explicitly rejected in the Thompson case. "The duty imposed by the trial courtthat the state should remove all limbs which might fall on the roadis an incorrect application of the law." Thompson, 701 So.2d at 955. The only other option would be for DOTD's inspectors to conduct a walking, on-the-ground inspection of every mature water oak along every Louisiana state highway if there were any branches located where they could fall onto the highway, even if those trees were not within the right-of-way. This is an unreasonable requirement. Furthermore, in Lewis v. State Through Dept. of Transp. and Dev., 94-2370 (La.4/21/95), 654 So.2d 311, the supreme court rejected the "under the tree" method as the only reasonable inspection procedure and did not impose liability when DOTD's drive-by inspections had failed to detect the presence of a dead tree because it was obscured by foliage created by two contiguous trees. Lewis, 654 So.2d at 314 n. 5 and 315. The rejection of this increased level of scrutiny was cited with approval in the Thompson case. Thompson, 701 So.2d at 956.
Based on our review of the record, therefore, we conclude that the trial court legally erred by implicitly imposing a more onerous duty on DOTD than that required by law. We further conclude that there is no reasonable factual basis in the record for a finding that DOTD had actual or constructive notice of the defective limb, given that we find the inspection method used by DOTD conformed to what it was legally and reasonably required to do in order to discover such a defect. Therefore, there was no breach of duty and no liability on the part of DOTD. In light of these findings, we do not address DOTD's remaining assignments of error.

CONCLUSION
Based on the foregoing, we reverse the judgment of the trial court. All costs of this appeal are assessed against Murphree.
REVERSED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Daigle never filed an answer or other response to the suit, and the record does not show whether he was served with citation and the petition. He did not participate in the trial and was not cast for damages in the judgment.
[3] The judgment awarded all of the damages to Tristem Murphree and none to Corona, who did not appeal.