STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 04-717 consolidated with CA 04-718


WILLIAM ANDERSON, ET UX.

VERSUS

METROPOLITAN PROPERTY AND CASUALTY INSURANCE
COMPANY D/B/A/ MET LIFE AUTO & HOME AND/OR ECONOMY
FIRE AND CASUALTY COMPANY

**********
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2002-3008-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

**********
**JOHN B. SCOFIELD**
**JUDGE**
**********

Court composed of Jimmie C. Peters, Michael G. Sullivan, and John B. Scofield, Judges.[*]

**REVERSED AND RENDERED.**



**Daniel G. Brenner**
**Bolen, Parker, & Brenner, LTD.**
**P. O. Box  11590**
**Alexandria, LA 71315-1590**
**Counsel for Defendants/Appellants:**
       **Willie Mae Berryman & Horace Mann Ins. Co.**


 **Clifford L. Newman**
**The Newman Law Firm**
**1925 Enterprise Blvd.**
**Lake Charles, LA 70601**
**Counsel for Plaintiffs/Appellees:**
       **Jennifer Baldridge & William Baldridge**

---

**Cory P. Roy**
**Attorney at Law**
**P. O. Box 447**
**Marksville, LA 71351**
**Counsel for Plaintiffs/Appellees:**
      **William Anderson, Jr. &**
      **Metropolitan Property and Casualty Insurance Co. d/b/a**
      **Met Life Auto & Home and/or Economy Fire & Casualty Co.**

SCOFIELD, Judge.[1]

Defendants, Willie Mae Berryman and Horace Mann Insurance Company, appeal a judgment of the district court finding Mrs. Berryman 50% at fault in a multiple vehicle accident and awarding Plaintiffs damages and costs. We reverse the finding of fault by the district court and render.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of a traffic accident involving three vehicles, all of which were traveling south on U.S. Highway 165 in Allen Parish on Sunday, November 25, 2002. The lead vehicle, a Buick sedan, was being operated by Mrs. Willie Berryman, who was insured by Horace Mann Insurance Company. Following directly behind Mrs. Berryman was a white Dodge pickup truck, being driven by William Baldridge who was insured by Economy Fire & Casualty Company. The third vehicle, also a Dodge pickup truck, brought up the rear. This vehicle, owned by William Anderson, Sr., and insured by Metropolitan Property and Casualty Insurance Company d/b/a/ Met Life Auto & Home and/or Economy Fire and Casualty Company, was being driven by William Anderson, Jr. All three vehicles had been following each other for a number of miles before the accident.

As the vehicles approached milepost 28.5 in Allen Parish, Mrs. Berryman observed an Acadian Ambulance traveling northbound, approaching in the opposite lane of travel. It is undisputed that the ambulance had its emergency lights activated, but there is some dispute as to whether it had activated its siren. In response to the approach of the oncoming ambulance, Mrs. Berryman pulled to the right and stopped her vehicle. Mr. Baldridge, who was following directly behind her, stated that her

---

[1]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

1

stop was rather abrupt, but, in any event, he was able to bring his vehicle to a safe stop behind Mrs. Berryman. Mr. Anderson, the third driver in line, did not stop and collided with Mr. Baldridge's pickup and pushed it into the Berryman vehicle. Both Mr. Baldridge and his passenger, his wife, Jennifer, sustained injuries as did both Andersons. No one in the Berryman vehicle was injured.

As a result of the accident, two different lawsuits were filed—the instant action and William Baldridge and Jennifer Baldridge v. Horace Mann Insurance Company, Metropolitan Property and Casualty Insurance Company d/b/a/ Met Life Auto & Home and/or Economy Fire and Casualty Company and Willie Mae Berryman and William Anderson, et al. The two cases were consolidated for trial and tried before the district court, which found Mrs. Berryman and Mr. Anderson, Jr., each to be 50% at fault. Following the rendition of the judgment, Defendants, Mrs. Berryman and Horace Mann Insurance, moved for judgment notwithstanding the verdict or, alternatively, for a new trial. Between the time that motion was filed and judgment on the motion was rendered, Defendants, William Anderson, Jr., and Metropolitan Property and Casualty Insurance Company, d/b/a/ Met Life Auto & Home and/or Economy Fire and Casualty Company were voluntarily dismissed, with prejudice, from each of the consolidated suits, presumably as the result of an out-of-court settlement.

Thereafter, the post-trial motions of Mrs. Berryman and Horace Mann Insurance were denied, and those parties appealed, arguing the trial court erred in its allocation of 50% fault to Mrs. Berryman and in the quantum of damages awarded to Plaintiffs, William Anderson, Jr., William Baldridge and Jennifer Baldridge.

2

Inasmuch as we reverse the trial court's allocation any fault to Mrs. Berryman, the issue of damages, in this appeal, becomes moot.

**LAW AND DISCUSSION**

Although this case involves a three-vehicle collision, two lawsuits, and multiple claims, determining liability at this point involves only an examination of the respective duties of Mrs. Berryman, the driver of the lead vehicle, and Mr. Anderson, Jr., the driver of the third vehicle. Fortunately, the law unambiguously sets forth the duties of each of these drivers.

First, we will examine the law establishing the duty of Mrs. Berryman. Our duty-risk analysis as it pertains to her is confined to her reaction to the oncoming ambulance. There is no contention that she did not have her vehicle under control, failed to keep a proper lookout, or otherwise operated her vehicle in a reckless or negligent manner. Our focus, therefore, is on whether she reacted properly upon seeing the approaching ambulance, which undisputedly had its flashing lights on and, according to Berryman, also was sounding its siren. Her duty under the circumstances of this case is spelled out in La.R.S. 32:125(A) (emphasis ours), which reads as follows:

> Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall *immediately* drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, *and shall stop* and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

Given that Mr. Anderson was a following motorist and that his vehicle struck the Baldridge vehicle from behind, his duties had more facets than those of Berryman. First, Mr. Anderson had the duty to keep his vehicle under proper control and to

maintain a proper lookout for hazards. *See Walker v. McCartney*, 96-706, 97-180 (La.App. 5 Cir. 9/17/97), 700 So.2d 898; *Morris v. State, Dep't of Transp.*, 94-2545 (La.App. 1 Cir. 10/6/95), 664 So.2d 1192, *writ denied*, 95-2982 (La. 2/9/96), 667 So.2d 537.

Second, as a following motorist whose vehicle collided with a preceding vehicle, Mr. Anderson is presumed to be negligent and, therefore, had the burden of proving lack of fault on his part. Louisiana Revised Statutes 32:81(A) states the following: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." *See Dugas v. Derouen*, 01-1397 (La.App. 3 Cir. 7/3/02), 824 So.2d 475, *writ denied*, 02-2131 (La. 11/15/02), 829 So.2d 426 and *Anderson v. May*, 01-1031 (La.App. 5 Cir. 2/13/02), 812 So.2d 81; *see also Ly v. State Through Dep't of Pub. Safety and Corr.*, 633 So.2d 197 (La.App. 1 Cir. 1993), *writ denied*, 93-3134 (La. 2/25/94); 634 So.2d 835 and *Taylor v. Voigtlander*, 36,670 (La.App. 2 Cir. 12/11/02), 833 So.2d 1204.

Third, in the same manner as Mrs. Berryman, Mr. Anderson's conduct was also subject to the mandates of La.R.S. 32:125(A) in reacting to the oncoming ambulance.

We shall now examine the conduct of these parties in light of the duties imposed upon them by law. In analyzing the conduct of Mrs. Berryman, we find that she comported with the provisions of La.R.S. 32:125(A). That statute instructed her that upon seeing the oncoming ambulance, she was to "immediately" drive her vehicle as far "as possible" to the right and "stop." This is precisely what she did. In the trial court's written reasons for judgment, it is stated that "Upon seeing the ambulance she [Mrs. Berryman] activated her right signal and pulled off to the right

4

side of the road, however, she could not pull entirely off the road due to the location of a bridge railing." Nevertheless, the trial court goes on to say that instead of stopping, "Berryman clearly should have crossed the small bridge and pulled off to the shoulder of the road."

The trial court's suggestion as to what Mrs. Berryman should have done upon seeing the approaching ambulance simply does not comply with the clear mandates of the statute. The statute required her to immediately turn to the right and stop. The statute does not allow the driver any leeway to ponder, to size up the situation, and to then select the best place to pull off the road.

Moreover, the trial court does not mention the evidence reflecting that the oncoming ambulance was following another vehicle which was traveling in the north-bound lane and was approaching Mrs. Berryman and the other motorists heading south. The following testimony of Mrs. Berryman on this point is revealing:

> QUESTION: And you saw the . . . this ambulance coming from a long way off?
>
> ANSWER: Yes, Sir.
>
> QUESTION: Okay. Any cars ahead of it?
>
> ANSWER: Yes, sir.
>
> QUESTION: Was the ambulance traveling faster than the car that was traveling ahead of it?
>
> ANSWER: (UNINTELLIGIBLE).
>
> QUESTION: Did it look like the ambulance needed to get around the car that was ahead of it?
>
> ANSWER: Yes.
>
> QUESTION: Did it look to you like that car was going to pullover and let the ambulance go by?

5

ANSWER: No, sir, it did not.

At the very least, this testimony suggests that the ambulance was about to pass the vehicle in front of it, a maneuver which would have brought the ambulance squarely into the southbound lane occupied by Mrs. Berryman and the others.

Our review of the record indicates that Mrs. Berryman's actions not only followed the letter of the law, but also, as a practical matter, because of the ambulance's overtaking of the vehicle preceding it, she had no choice other than to turn immediately to the right in an attempt to get out of the way as directed by the statute.

Turning to the actions of Mr. Anderson, we note initially that he had been following the Baldridge white pickup truck since passing through Oakdale several miles to the north of the accident scene. It is undisputed that the accident occurred at approximately 2:00 p.m. and that weather was clear. It is also undisputed that the terrain is flat and that the stretch of road where the accident occurred is straight. Accordingly, there is no suggesting that Mr. Anderson's vision was obscured in any way. Yet, by his own admission, prior to the collision, Mr. Anderson never saw the Berryman vehicle and never saw the bridge. Most significantly, he testified as follows regarding the approaching ambulance:

QUESTION: Okay. Had you seen the ambulance coming?

ANSWER: No, I haven't seen it yet.

QUESTION: So you never saw the ambulance.

ANSWER: No.

William Baldridge, driver of the white pickup with which Mr. Anderson's vehicle collided, testified that he saw Mrs. Berryman put on her brakes "and I figured

she was slowing down for the ambulance, so I started slowing down and she just came to a stop in the roadway." Mr. Baldridge testified further that he pulled over and brought his pickup to a stop, looked in his rear view mirror and saw Mr. Anderson's truck approaching and consequently eased forward closer to the Berryman vehicle. The following testimony of Mr. Anderson is quite revealing about what he observed just before the initial impact:

> QUESTION: So you did not see the truck rolling, stop, roll forward, and stop again, you didn't see that all, did you?

> ANSWER: No.

Mr. Baldridge's wife, Jennifer, was a passenger in the Baldridge vehicle. She testified that after the accident she heard Anderson say that just before the collision he "looked up" and saw white. On cross-examination, Mr. Anderson was asked about this:

> QUESTION: Now after the accident you made a comment to Mrs. Jennifer Baldridge that you looked up and saw white, do you recall saying that to Mrs. Baldridge?

> ANSWER: I might have I don't remember.

> QUESTION: And the pickup truck Mr. Baldridge was driving you recall that being white.

> ANSWER: Yeah, a white truck.

There is nothing in the record explaining what Mr. Anderson was doing just before he was to "look up," no indication of just what it was Mr. Anderson might have been looking at that caused him to miss so much of what was obvious to everyone else at the scene. William Anderson, Sr., Mr. Anderson's father, was a passenger in the Anderson vehicle. Just before the collision, the senior Anderson was asleep. He was awakened when his son began applying the brakes. In spite of being awakened from

7

sleep, this elderly man clearly saw the ambulance and its flashing lights, things that his son somehow failed to see. When asked why his son could not see the stopped pickup truck ahead of him, the seventy-one-year-old father said, "Well, I don't know. He should have seen it. I don't know. . . . Maybe he was asleep. I don't know about that."

Even with this litany of duty violations by Mr. Anderson, the most telling evidence of Mr. Anderson's fault is that Mr. Baldridge was able to bring his vehicle to a stop with apparent ease. Mr. Baldridge was alerted by the oncoming ambulance and, like Mrs. Berryman, proceeded to follow the mandates of La.R.S. 32:125(A) by bringing his vehicle to a stop. Mr. Baldridge was not only able to bring his vehicle to a stop, he was also thereafter able to move his vehicle forward upon seeing the Anderson vehicle bearing down on him from the north. It is to be noted that Mr. Baldridge was able to do this in spite of his significant handicap which required him to operate his specially equipped vehicle solely with the use of his hands.

There is an abundance of evidence that Anderson violated all of the duties applicable to his conduct under the circumstances. This evidence is undisputed, much of it coming from Anderson's own testimony. He failed to keep a lookout, failed to see what he should have seen, failed to keep his vehicle under control, and failed to comply with the dictates of La.R.S. 32:125(A).

We find that there was no material breach of any duty owed by Mrs. Berryman. She, like Mr. Baldridge, was fully alert to her surroundings, had her vehicle well under control and heeded the oncoming ambulance by strictly complying with the provisions of La.R.S. 32:125(A).

We are mindful that we are not to disturb the factual findings of the trial court absent manifest error.

8

> In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error--clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Ass'n*, 2002-2660, p. 9, (La.6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Id.* The reviewing court should affirm the district court where the district court judgment is not clearly wrong or manifestly erroneous. *Id.* at 9-10, 851 So.2d at 1023.

*Hall v. Folger Coffee Co.*, 03-606, p.9 (La. 4/14/04), 874 So.2d 90, 98.

But we are also mindful of our constitutional task of reviewing the facts. Our examination of the facts leads us to the conclusion that the trial court was manifestly erroneous in finding Mrs. Berryman 50% at fault and Mr. Anderson only 50% at fault. We find Mr. Anderson to be 100% at fault and to be the sole cause of the accident in question.

Under the circumstances, we reverse the decision of the trial court finding Mrs. Berryman 50% at fault and absolve her of any fault in the accident. Further, we find Mr. Anderson to be 100% at fault. Consequently, that potion of the lower court judgment rendered against Willie Mae Berryman and Horace Mann Insurance Company is reversed and set aside.[2] Our decision here, together with the earlier post-judgment dismissals, renders the issue of damages moot.

All costs at the trial level, subject to the terms of the dismissals, are assessed against William Anderson, Jr., and Metropolitan Property and Casualty Insurance Company d/b/a/ Met Life Auto & Home and/or Economy Fire and Casualty Company. All costs of this appeal are assessed against appellee, William Anderson, Jr.

**REVERSED AND RENDERED.**

---

[2]None of the parties, other than Mrs. Berryman and Horace Mann Insurance Company, appealed or answered the appeal. Therefore, the trial court's award of damages against Mrs. Berryman and Horace Mann cannot be reallocated against Anderson and Metropolitan.