917 So.2d 15 (2005)
Brenna M. BARTHEL, Individually, on Behalf of Her Minor Child Paula R. Lagarde and on Behalf of Her Deceased Child Aimee Celeste Lagarde
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2004 CA 1619.
Court of Appeal of Louisiana, First Circuit.
June 10, 2005.
*17 Douglas H. Greenburg, Houma, Counsel for Plaintiff/Appellee Brenna Barthel.
Charles C. Foti, Jr., Attorney General, William S. Culver, Jr., New Orleans, Counsel for Defendant/Appellant State of Louisiana, DOTD.
Philip J. McMahon, Houma, Counsel for Defendant/Appellee Shannon Franks, U.T.S. & Wausau.
Before: WHIPPLE, DOWNING and HUGHES, JJ.
DOWNING, J.
Two primary questions are raised by this appeal. The first is whether a malfunctioning traffic signal light was a cause-in-fact of an automobile fatality in Houma, La. The second is whether the State of Louisiana, Department of Transportation and Development (DOTD), received constructive notice of the dangerous condition caused by the malfunctioning light. For the following reasons we affirm the trial court judgment assessing the DOTD with twenty-five percent (25%) liability and the negligent driver with seventy-five percent (75%) liability.
On March 22, 2001, Shannon Franks, driving a large pick-up truck, within the scope of his employment, collided with a vehicle driven by Aimee Lagarde. Ms. Lagarde died at the scene of the accident. A witness driving some distance behind Ms. Lagarde's vehicle maintained that the light was showing green from her direction when she turned left into the intersection. Franks also claimed that the light was showing green from his direction as he passed through the intersection. The police said that the light appeared to be working normally when they arrived at the scene.
A bench trial was held March 22-23, 2004. On March 26, 2004, the trial court awarded Brenna M. Barthel, individually and on behalf of her minor child, Paula Lagarde, (plaintiffs) $500,000.00 for the wrongful death of Ms. Lagarde and $50,000.00 for her survival action. Franks, his employer, Utility Construction and Technological Solutions, L.L.C., and its insurer, *18 Wassau Underwriters Insurance Company, (collectively, Franks) were held seventy-five percent (75%) liable, and the DOTD was held twenty-five percent (25%) liable in causing the accident. The DOTD appealed alleging that the court erred in assessing it with any liability and also in awarding survival damages.
The plaintiffs answered the appeal alleging that the court erred in denying their motion in limine and allowing DOTD to present evidence on the propriety of the function of the signal light system rather than applying the rule of spoliation and its legal consequences. Plaintiffs also allege that the DOTD should have been assessed with fifty percent liability for causing the accident and the survival award should be increased. The plaintiffs further allege that DOTD violated an order to preserve all components of the signal light, and since they failed to do so, that there are sufficient grounds to deem this appeal frivolous pursuant to LSA-C.C.P. art 2164.

THE SIGNAL LIGHT
In assessing 25% liability against the DOTD and 75% against Mr. Franks, the trial court stated that if both Mr. Calloway and Mr. Franks were to be believed, then the light was showing green from both directions. The trial court said that after considering all of the evidence and testimony, it was more probable than not that the traffic light at the intersection was not working properly at the time of the accident. The court's opinion was based upon the evidence in the record.
Joe Calloway, the only non-party eyewitness, was driving several car lengths behind Ms. Lagarde when the accident occurred. He testified that as he turned onto St. Charles Street, he noticed Ms. Lagarde's vehicle stopped at the St. Charles and Louisiana Highway 182 intersection. His statements were conflicting because initially he told the police that he did not notice what color the light was but that Ms. Lagarde was completely stopped at the intersection. Later when deposed, he testified that Ms. Lagarde had a green light when she turned left toward downtown Houma onto Hwy. 182 and was struck on the driver's side by a large pick-up truck. In his deposition Mr. Calloway was adamant that at the time of the accident, the light was working properly, and that Mr. Franks ran the red light while talking on a cell phone.
Conversely, Mr. Franks denied running a red light, denied talking on the cell phone at the time, but did admit to be traveling at a rate of speed over the legal limit. He also admitted to driving without a valid license.
To bolster Mr. Franks's assertion that the light was not working properly, numerous witnesses testified that they had noticed the signal occasionally malfunctioning. The trial court found that the testimony of Jennifer Pellegrin was especially compelling. She testified that as she traveled down St. Charles Street, and drove through the intersection in question on a green light, the cars traveling down Hwy. 182 began blowing their horns because they also appeared to have a green traffic signal.
Both parties claim that the evidence presented at trial indicates that each vehicle had a green light. Whether or not the traffic signal was green is a factual finding. There is ample evidence in the record to support both versions of the accident. The extensive reasons for judgment filed by the trial court indicated that its decision in this matter was made after consideration of all the pertinent evidence. The trial court stated that after a careful review of the evidence, "there was absolutely no question that Mr. Franks was negligent in this accident and is primarily responsible *19 for the death of Miss Lagarde." It also stated that it held the DOTD to be a cause-in-fact of the accident because of the defective light and malfunction that caused the light to exhibit a green signal in two directions.
We therefore cannot conclude that the trial court's apportionment of fault was manifestly erroneous. Apportionment of fault is a factual determination which should not be disturbed unless manifestly erroneous. Morris v. State, Dept. of Transp., 94-2545, p. 12 (La.App. 1 Cir. 10/6/95), 664 So.2d 1192, 1199.
Accordingly, the DOTD's first assignment of error and plaintiffs' answer to appeal assigning error to apportionment of fault is without merit.

CONSTRUCTIVE NOTICE
For the state to be liable for a hazardous condition on a roadway, it must be shown that the state had actual or constructive knowledge of the condition. Morris, 94-2545 at pp. 5-6, 664 So.2d at 1196. "Constructive notice" in negligence cases exists when the defect has existed for such a period of time that it would have been discovered and repaired had the public body exercised reasonable care. Id.
The record indicates that the traffic signal light in question was installed in 1984. Numerous complaints about its malfunctioning were made since its installation. The DOTD maintenance crew had been dispatched to make repairs on this signal eleven times within less than one-year of the accident. These repairs included replacing various component parts but the entire control box was never replaced.
The trial court stated in its reasons for judgment that he determined that there were too many complaints for the DOTD to simply not replace the entire control box. No bright-line rule has developed in the jurisprudence concerning how many times a traffic signal light must malfunction before DOTD has constructive notice that it should be replaced. However, the following cases gives this court guidance on the factors to weight and consider in determining whether the trial court manifestly erred in determining whether the DOTD had constructive notice.
In Rhodes v. State Through Dept. of Transp. and Development, 94-1758 (La. App. 1 Cir. 12/20/96), 684 So.2d 1134, this court was aided in its determination of constructive notice by testimony from a DOTD signal engineer. This witness testified that DOTD had no uniform rules for the maintenance of traffic signals, even though the Engineering Directives and Standards Manual provides that DOTD should have maintenance rules that include checking and cleaning the contacts every six months. Id., 94-1758 at p. 10, 684 So.2d at 1142.
In Rhodes the court was further aided in its determination of constructive notice by the testimony of plaintiff's expert who said that the Kentron controller, similar to the one at issue here, is prone to encounter difficulties with contacts burning out resulting in quick cycling. Kentron recommended that the controller be checked every six months. Id. The evidence in Rhodes further showed that the signal electrician who performed repairs a few weeks prior to the accident did not clean or even check the contacts during this repair. Id., 94-1758 at p. 11, 684 So.2d at 1143.
Here, the DOTD representative, Travis Cortez, testified that there was no follow-up policy or procedure on signal lights that have been causing problems. Cortez further testified that the light involved at this intersection was a Kentron product. Unlike the situation in Rhodes, however, here there is no evidence in the record that *20 DOTD should have its own maintenance schedule or that Kentron recommends maintenance and check-up procedure. Nor is there evidence in the record as there was in Rhodes, that Kentron contacts need to be checked and cleaned periodically because they are prone to burning out.
In Whigham v. Boyd, 97-0693 (La.App. 4 Cir. 10/1/97), 700 So.2d 1163, the DOTD was assessed with comparative fault because the court found that it had constructive notice of a malfunctioning signal light. In Whigham there had been forty-four complaints and sixty-five repair work orders for the signal. Additionally, replacement of the equipment was scheduled long before the accident occurred. The court found that DOTD's failure to replace the signal in a timely manner was sufficient to fulfill the constructive notice requirement. Id., 97-0693 at p. 5, 700 So.2d at 1166.
In Howard v. Derokey, 98-0893 (La. App. 4 Cir. 2/10/99), 729 So.2d 654, the City of New Orleans was held liable for a malfunctioning signal light. The court concluded that the City had constructive notice because there had been nine service calls on the light within five days of the accident and a repair was made two hours before the collision.
In this case, neither appellant nor appellee have assisted the court concerning whether the eleven complaints and/or repairs that were made within approximately seven months prior to this accident constitute constructive notice to the DOTD. The question on appeal, however, is not whether we agree with the trial court, but whether the trial court was manifestly erroneous in making its determination.
Our reading of the record supports the conclusion that the trial court did not manifestly err in finding that the number of complaints and/or work orders on this signal light in question, that had been installed since 1984, put DOTD on notice that something more than simple repairs were necessary to prevent further malfunctions at this busy intersection. Accordingly, DOTD's second assignment of error is without merit.

SPOLIATION
In plaintiffs' answer to appeal they assign error to the trial court allowing the DOTD to present evidence at trial that the traffic signal light was properly functioning at the time of the accident. The plaintiffs contend that DOTD forfeited its right when it removed dials and other working parts in direct violation of the protective order requiring it to maintain custody of all components of the light for testing.
The theory of "spoliation" of evidence refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. Desselle v. Jefferson Parish Hospital District No. 2 d/b/a East Jefferson General Hospital, 04-455, p. 16 (La.App. 5 Cir. 10/12/04), 887 So.2d 524, 534. A plaintiff asserting a claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence. Allegations of negligent conduct are insufficient. Id.
There is nothing in the record to support a conclusion that the DOTD intentionally destroyed evidence to deprive plaintiffs of its use. On March 24, 2001, two days after the accident, the DOTD removed the control box and sent it to Baton Rouge for testing. The injunction was not filed until March 28, 2001. Further, the trial court found in favor of plaintiffs and this court has affirmed that decision. We, therefore conclude that plaintiffs have suffered no prejudice. Accordingly, plaintiffs' allegations in this regard in their answer to appeal are without merit.

*21 SURVIVAL DAMAGES

The DOTD alleges that the trial court erred in awarding $50,000.00 in survival damages in this case because there was absolutely no evidence that Ms. Lagarde was conscious between the time of the collision and her death. Conversely, plaintiffs allege that the award is too low.
The evidence reveals that Ms. Lagarde appeared to be unconscious when Mr. Calloway arrived at the scene. The trial court stated it awarded survival damages because it took Mr. Calloway some minutes before he could attend to Ms. Lagarde, and by the time he got to her, he did hear her moan, felt her cheek quiver and saw her face drain of color. Therefore, it was not manifestly erroneous for the trial court to conclude that Ms. Lagarde suffered some pain before her death and awarded damages accordingly.
A trial court is within its much discretion in awarding survival damages for pain and suffering where there is the smallest amount of evidence of pain on the part of the deceased by his actions or otherwise. Hampton v. Rubicon Chemicals, Inc., 579 So.2d 458, 469 (La.App. 1 Cir.1991). The factors to be considering in assessing quantum in pain and suffering are the severity and duration of the pain. Id.
The plaintiffs further allege that the trial court did not address Ms. Lagarde's pre-impact damages for the fear she must have suffered before the collision. They contend that the trial court completely overlooked this additional element of her survival damage claim.
Fear of impact is an element of pre-death pain and suffering. Where there is no indication that a decedent consciously suffered, an award for the pain suffered before the death is denied. Pierre v. Lallie Kemp Charity Hosp., 515 So.2d 614, 619 (La.App. 1 Cir.1987). We conclude the trial court was not manifestly erroneous in making its award. These assignments of error are without merit. The judgment of the trial court is affirmed.

DECREE
We conclude that the trial court was not manifestly erroneous in determining that the traffic signal light malfunctioned, in making its allocation of fault, and in its assessment of the quantum award. The trial court's reasons for judgment indicate that the trial court considered all relevant factors in deriving its conclusions. The answer to appeal is denied. Accordingly, the trial court's judgment is affirmed. Costs of this appeal in the amount of $2,024.00 are assessed to the DOTD.
AFFIRMED; ANSWER TO APPEAL DENIED.
WHIPPLE, J., concurs. The record evidence overwhelmingly supports the trial court's well-reasoned judgment.
HUGHES, J., concurs.