KUHN, J.
12Plaintiff-appellant, Pelican Educational Foundation, Inc. (Pelican) appeals the trial court’s judgment, sustaining a peremptory exception raising the objection of no cause of action asserted by defendants-appellees, the Louisiana State Board of Elementary and Secondary Education (BESE) and Penny Dastugue in her capacity as president of BESE, and dismissing its claims for a writ of mandamus, injunctive relief, and a declaratory judgment. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
According to the allegations of the petition, Pelican is a non-profit corporation *443 that was authorized by a charter,[1] entered into with BESE under Louisiana’s Charter School Demonstrating Programs Law (the Charter School Law), to operate Abram-son Science and Technology Charter School (Abramson) as a Type 5 charter school[2] since June 2007. On July 15, 2011, Pelican received a letter issued by BESE president Dastugue, advising that “in accordance with the plenary powers granted to [BESE] under ... the Louisiana Constitution, [Abramson] is hereby placed under suspension pending investigation.” On July 27, 2011, Pelican received notice from BESE “that matters relative to [Abram-son] lswill be considered, including investigative findings to date that may result in termination of the Charter School Contract between [BESE] and [Pelican], and may result in revocation of the Abramson Charter, at the next scheduled board meeting on August 3, 2011.”
On August 1, 2011, Pelican filed a petition seeking a temporary restraining order (TRO) to enjoin the August 3, 2011 BESE meeting. Pelican also requested issuance of preliminary and permanent injunctions to enjoin BESE from suspending it as a result of any action taken at the August 3, 2011 meeting, a writ of mandamus, and a declaratory judgment. The trial court denied the TRO on that same day, stating that Pelican had failed to show the requisite irreparable injury.
On August 4, 2011, Pelican filed a supplemental petition, re-averring the allegations of its original petition. Pelican also alleged that a meeting was held by BESE on August 3, 2011, at which time BESE voted to terminate and revoke Pelican’s charter to operate Abramson in violation of both the provisions of the Charter Contract that BESE had entered into with Pelican as well as statutory law, including the Charter School Law and the Louisiana Open Meetings Law (OML).
Pelican attached to its petition a hand-delivered notice of termination from BESE to Pelican dated August 3, 2011, that stated the charter was “terminated immediately and ... revoked based on a determination that the health, safety, and welfare of students is threatened.” Attached to the notice as “Exhibit A” was a letter, dated July 28, 2011, from Ollie S. Tyler, the acting state superintendent of the Louisiana Department of Education (LDE), to Dastugue, which set forth LDE’s findings as a result of an investigation that it commenced on July 14, 2011, |4“after learning of allegations of incidents possibly sexual in nature involving students attending [Abramson].” The letter made preliminary findings and included supporting documentation. The findings included a lack of supervision; failure to investigate instances of alleged sexual behavior occurring on the school campus; failure to report to police and/or the Department of
*444 Children and Family Services suspected child abuse involving at least three incidents of age-inappropriate sexual behavior in a student; failure to evaluate two students for disability; and failure to document, lack of adequate documentation, and lack of follow up pertaining to alleged specified incidents involving the safety, health, and welfare of students. The July 28, 2011 letter and supporting documents comprised approximately 56 pages of information. The August 3, 2011 notice of termination expressly adopted the July 28, 2011 letter “as [BESE’s] findings and basis of termination.”
On August 10, 2011, BESE filed a peremptory exception raising the objection of no cause of action, urging that a review of the allegations of the petition as well as documents attached to the original and supplemental petition demonstrated that Pelican was not entitled to relief. On August 11, 2011, after a hearing, the trial court sustained the exception and denied Pelican the opportunity to amend its petition. A judgment dismissing all Pelican’s claims was signed on August 30, 2011. This appeal followed.
NO CAUSE OF ACTION
The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts of the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 1,616 So.2d 1234, 1235 (La.1993). No evidence may be introduced to support or controvert the objection. La. C.C.P. art. 931. A court must review the petition and accept all well pleaded facts as true, and the only issue on the trial of the exception is whether, on the face of the petition, plaintiff is legally entitled to the relief sought. Everything on Wheels Subaru, Inc., 616 So.2d at 1235; Cage v. Adoption Options of Louisiana, Inc., 94-2173 (La.App. 1st Cir.6/23/95), 657 So.2d 670, 671. Furthermore, the facts shown in any annexed documents must also be accepted as true. B & C Elec., Inc. v. East Baton Rouge Parish School Bd., 2002-1578 (La.App. 1st Cir.5/9/03), 849 So.2d 616, 619.
In reviewing a trial court’s ruling sustaining an exception of no cause of action, the reviewing court conducts a de novo review because the exception raises a question of law and the lower court’s decision is based only on the sufficiency of the petition. The burden of demonstrating that no cause of action has been stated is upon the exceptor. Any doubts are resolved in favor of the legal sufficiency of the petition. Id.
REQUESTED RELIEF
Pelican urges that between the allegations of its petition and the documents it attached to its petition, the record establishes sufficient facts to support its claims for a writ of mandamus, injunctive relief, and a declaratory judgment. We examine each of these forms of relief vis-á-vis Pelican’s allegations and annexed documents.
Mandamus is a writ compelling a public officer to perform a ministerial duty required by law. La. C.C.P. arts. 3861 and 3863. Mandamus is an extraordinary remedy, which must be used sparingly by the court and only to |ficompel action that is clearly provided by law. Poole v. The Louisiana Board of Electrolysis Examiners, 2006-0810 (La.App. 1st Cir.5/16/07), 964 So.2d 960, 963. Although the granting of a writ of mandamus, as a general rule, is considered improper when the act sought to be commanded contains any element of discretion, it has been allowed in certain cases to correct an arbitrary and capricious abuse of discretion by public boards or officials, such as the arbitrary refusal *445 by an administrative body to grant a license. Id.
The writ of injunction, a harsh, drastic, and extraordinary remedy, should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. Irreparable injury has been interpreted to mean loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought. But a showing of irreparable injury is not necessary when the act sought to be enjoined is unlawful, or a deprivation of a constitutional right is involved. Dale v. Louisiana Secretary of State, 2007-2020 (La.App. 1st Cir.10/11/07), 971 So.2d 1136, 1141. Generally, a party seeking the issuance of a preliminary injunction must show, in addition to irreparable injury if the injunction does not issue, entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Roba, Inc. v. Courtney, 2009-0509 (La.App. 1st Cir.8/10/10), 47 So.3d 509, 518. Although the plaintiff is only required to make a prima facie showing at the hearing regarding a preliminary injunction, the issuance of a permanent injunction takes place only after a trial on 17the merits, in which the burden of proof must be carried by a preponderance of the evidence, rather than a prima facie showing. Farmer’s Seafood Co., Inc. v. State ex rel Dep’t of Pub. Safety, 2010-1746 (La.App. 1st Cir.2/14/11), 56 So.3d 1263,1266.
A person interested under a written contract or other writing constituting a contract or whose rights, status, or other legal relations are affected by a statute may seek the determination of any question of construction or validity arising under the instrument, statute, or contract and obtain a declaration of rights, status, or other legal relations. See La. C.C.P. art. 1872. A declaratory judgment may be rendered whether or not further relief is or could be claimed. La. C.C.P. art. 1871. A declaratory judgment has the force and effect of a final judgment or decree and may serve as the basis for a petition seeking further relief. See La. C.C.P. arts. 1871,1878.
DISCUSSION
Initially, we note that La. Const. Art. VIII, § 3, creates BESE and mandates that “[BESE] shall supervise and control the public elementary and secondary schools and special schools under its jurisdiction,” as well as “have other powers, duties, and responsibilities as provided by this constitution or by law.” Under La. R.S. 17:3981, BESE is empowered to enter into any proposed charter, which complies with the Louisiana Charter School Law and the rules adopted pursuant to its authority that BESE determines is a valid, complete, financially well-structured, and educationally sound proposal.
The ultimate issues before us involve the proper interpretation of contractual and regulatory language, i.e., questions of law, subject to de novo preview. See Solet v. Brooks, 09-0568 (La.App. 1st Cir.12/16/09), 30 So.3d 96, 99 and Red Stick Studio Dev., L.L.C. v. State ex rel. Dep’t of Econ. Dev., 2010-0193 (La.1/19/11), 56 So.3d 181, 187.
The Charter Contract issued by BESE to Pelican, which was attached to the petition, states in Section 5, “CHARTER TERM, RENEWAL & REVOCATION,” in a subsection entitled “Revocation”:
5.4.1. As provided by law, BESE may terminate or revoke this Agree- *446 merit at any time upon a determination and affirmative vote by a majority of BESE that the Charter Operator, its board members, officers or employees did any of the following:
i.Committed a material violation of any of the conditions, standards, or procedures provided for in the approved charter,
ii.Failed to meet or pursue within the agreed timelines any of the academic or other educational results specified in the approved charter.
iii. Failed to meet generally accepted accountings standards of fiscal management.
iv. Violated any provision of law applicable to a charter school, its officers, or employees.
5.4.2. This Charter Contract may be terminated immediately and the [cjharter revoked if BESE determines that the health, safety, or welfare of students is threatened. BESE must provide written notice of termination, which shall include its findings and basis for termination. The termination and revocation shall be effective upon receipt of the notice of termination by the [cjharter [ojper-ator. (Emphasis added.)
Based on the plain language of Section 5.4.2 of the Charter Contract, “if BESE determines that the health, safety, or welfare of students is threatened,” BESE may revoke the charter. The only procedural protection afforded to Pelican under Section 5.4.2 is that BESE “must provide written notice of termination, |awhich shall include its findings and basis for termination.” With the August 3, 2011 termination notice from BESE to Pelican, which adopted the July 28, 2011 letter from LDE to BESE as its findings and basis of termination, BESE complied with Section 5.4.2. Thus, applying Section 5.4.2 of the Charter Contract to the facts deemed established by the petition and the attachments, the termination and revocation was effective on August 3, 2011, when Pelican received the notice.
Pelican asserts that before BESE could revoke its charter, under the Charter School Law, which was incorporated into the charter agreement, Pelican was afforded procedural protections. Louisiana Administrative Code (LAC), Title 28 entitled “Education” in Part CXXXIX, appears Bulletin 126, § 101, which provides in pertinent part:
A. The regulations set forth in this bulletin are incorporated into all charters approved by BESE and shall bind all charter schools approved by BESE.
Pelican points to the provisions of LAC, Title 28, Part CXXXIX, Bulletin 126, Chapter 17, entitled “Revocation Proceedings,” to assert that, in concluding the petition did not state a cause of action for the requested relief, the trial court misinterpreted § 1703.
Chapter 17 consists of two sections. In the first section, entitled “Reasons for Revocation,” § 1701 states:
A. An authorizer may revoke a school’s charter any time prior to the expiration of a charter operator’s five-year term following initial approval or prior to the expiration of its subsequent renewal, if such is granted pursuant to Chapter 15 [Charter Renewal] of this bulletin, upon a determination that the charter school or its officers or employees did any of the following:
1. committed a material violation of any of the conditions, standards, or procedures provided for in the approved charter;
*447 |in2. failed to meet or pursue within the agreed timelines any of the academic and other educational results specified in the approved charter;
3. failed to meet generally accepted accounting standards of fiscal management;
4. violated any provision of law or BESE policy applicable to a charter school, its officers, or employees.
B. BESE may also revoke a [school’s] charter if:
1. the health, safety, and welfare of students is threatened;
2. failed to meet the minimum standards for continued operation pursuant to R.S. 17:10.5, after four years of operation; or
8. any other reasons for revocation listed as such in a charter school’s charter contract.
And the following section, § 1703, provides in part:
A. Recommendation to Revoke Charter for BESE-Authorized Charter Schools
1. A recommendation to revoke a charter shall be made to BESE by the [LDE] at least one BESE meeting prior to the BESE meeting at which the recommendation may be considered, except as otherwise provided herein when the health, safety, and welfare of students is at issue.
2. Prior to the BESE meeting at which the [LDE] will make a recommendation that BESE commence a revocation proceeding, the [LDE] will inform the charter operator that it is requesting such and the reasons therefor and may meet with the charter operator, upon request, to discuss the revocation recommendation.
3. Following [LDE’s] recommendation to revoke a charter, BESE shall determine if it will commence a revocation proceeding.
4.BESE may, on its own, commence a charter revocation proceeding....
B. Revocation Hearing for BESE-Authorized Charter Schools 1. The charter operator shall have an opportunity for a hearing prior to the revocation of its charter.
InC. Hearing Officer for BESE-Au-thorized Charter Schools 1. BESE shall appoint a hearing officer to preside over the revocation hearing and carry out certain adjudicative functions including, but not limited to ... rule on offers of proof and receive relevant evidence....
D. Revocation Hearing Notice for BESE-Authorized Charter Schools 1. A charter operator shall be provided reasonable notice of the revocation hearing at least 15 calendar days prior to the scheduled revocation hearing....
F. Presentation and Evaluation of Evidence at Revocation Hearing for BESE-Authorized Charter Schools
1. At the charter revocation hearing, an opportunity shall be afforded all parties to respond and present evidence on all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts. (Emphasis added.)
While acknowledging under § 1701(B) BESE can revoke its charter when the health, safety, and welfare of students is threatened, Pelican maintains § 1703(B) gives BESE only the discretion to initiate a charter revocation proceeding, not the right to forego the mandatory procedural due process requirements set forth in § 1703 as the trial court construed. Pelican also urges that under the procedure *448 set forth in § 1701(B)(1), as a charter operator, Pelican “shall have an opportunity for a hearing prior to the revocation of its charter.” Additionally, Pelican asserts that the provisions of § 1701(C)(1) (mandating BESE to appoint a hearing officer preside over the revocation hearing), § 1701(D)(1) (mandating reasonable notice at least 15 days before the scheduled revocation hearing), and § 1701(F)(1) (mandating that all parties be afforded an opportunity to respond and present evidence) also apply.
112Construing the language of the Charter Contract alongside the provisions of Chapter 17 of Bulletin 126, we find nothing requiring that the procedure set forth under Section 5.4.2 must comply with or is otherwise dependent on the procedure of § 1701. Our review convinces us that, in this case, BESE has at its option two separate procedures for revoking a charter operator’s charter when the health, safety, and/or welfare of students are at issue. BESE chose to proceed under the terms of Section 5.4.2 of the Charter Contract rather than the provisions of §§ 1701 and 1703. We find nothing in the Charter Contract or the Charter School Law that precludes BESE from doing so.
In its final attempt to maintain its claims for relief under the provisions of the Charter Contract, Pelican relies on Exhibit 1 of the Charter Contract, entitled “FRAMEWORK FOR THE EVALUATION OF LOUISIANA CHARTER SCHOOLS.” In a section of Exhibit 1, “Contract Revocation (At Any Time) ” appearing on page 7 of 7, the following is set forth:
[BESE] has the authority to revoke a school’s contract at any time during the charter term if it is determined that the charter school, one if its officers, or employees has:
• Committed a material violation of any of the conditions, standards, or procedures of the charter
• Failed to meet within agreed time-lines any of the academic or other educational results specified in charter
• Failed to meet generally accepted accounting standard of fiscal management
• Violated of (sic) any law applicable to a charter school, its officers or employees
In all circumstances, [BESE] shall follow the requirements of the Louisiana Charter School Law and its charter school contract, including all due process requirements, regarding the processes | ¡¿required for revocation, extension, non-extension, renewal and nonrenewal. (Emphasis added.)
Based on the provisions of the final paragraph of Exhibit I, Pelican claims BESE was required to follow “all due process requirements regarding the processes for revocation” before it could terminate the Charter Contract.
Exhibit I merely reiterates the same bases for revocation set forth in Section 5.4.1 of the Charter Contract as well as those stated in § 1701A of Bulletin 126. Thus, the provision “[i]n all circumstances,” clearly references the enumerated “circumstances” immediately preceding the mandate that BESE afford due process requirements in revoking a charter. As such, it does not support Pelican’s assertion that Exhibit I creates an independent basis for a due-process hearing prior to revocation and termination of a charter operator’s charter where, as here, BESE has determined that the health, safety, and welfare of the students is at issue.
Accordingly, we find nothing in the Charter Contract or the Charter School Law that supports a claim for either a writ *449 of mandamus, injunctive relief, or a declaratory judgment. Because BESE was permitted under Section 5.4.2 of the Charter Contract to revoke Pelican’s charter immediately once it determined that the health, safety, or welfare of the students was threatened, BESE’s act was not illegal. And since BESE had the discretion to revoke the charter, issuance of a writ of mandamus is not relief available under the allegations or documents attached to the petition. Similarly, Pelican has failed to demonstrate that BESE’s revocation was unlawful or to make the requisite showing of either irreparable harm or that it can prevail on the merits of the case so as to support issuance of any injunctive relief. Lastly, in reviewing the trial court’s action of sustaining the 114exception of no cause of action, we have examined Pelican’s rights, status, and other legal relations under the Charter Contract and Charter School Law and determined that neither the allegations nor documents attached to the petition require that BESE afford Pelican a revocation hearing. As such, Pelican is not entitled to a declaratory judgment so ordering. Thus, we find no error in the trial court’s action of sustaining the peremptory exception of no cause of action insofar as the terms of the Charter Contract or the Charter School Law.[3]
OPEN MEETINGS LAW (OML)
Louisiana’s OML requires every meeting of any public body shall be open to the public unless closed pursuant to express provisions of the OML. See La. R.S. 42:14. A meeting is the convening of a quorum of a public body to deliberate or act on a matter over which the public body has supervision, control, jurisdiction, or advisory power. It also means the convening of a quorum of a public body by the public body or by another public official to receive information regarding a matter over which the public body has supervision, control, jurisdiction, or advisory power. La. R.S. 42:1S(A)(1). A public body includes a state board where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of that board. See La. R.S. 42:13(A)(2). Any action taken in violation of the OML is voidable by a court of | ^competent jurisdiction. La. R.S. 42:24. In an OML enforcement proceeding, plaintiff may seek and the court may grant, among other things, a writ of mandamus, injunctive relief, and a declaratory judgment. See La. R.S. 42:26.
Pelican asserts that because BESE is a public body, the suspension of its charter without a public meeting was illegal under the OML. Thus, Pelican claims that under La. R.S. 42:26, it is entitled to relief and that the trial court’s dismissal of its claims was, therefore, erroneous.
Pelican has not cited, and we have not found, any requirement that a suspension of a charter must be made at a meeting of BESE.[4] Moreover, according to the alle *450 gations of its petition, in paragraph 9, Pelican averred, “[o]n information and belief, neither [Dastugue nor BESE] complied with the [OML], by calling a board meeting with proper notice and voting to authorize the ‘suspension’ described in the July 15 letter.” Nothing in either the allegations of or the documents attached to the petition avers or shows that BESE’s action of suspending Pelican’s charter was taken as a result of a meeting that was not open 11(ito the public. The record contains a notice to Pelican, dated July 27, 2011, subsequent to Pelican’s receipt of the suspension letter, advising that “matters relative to [Abramson]” would be considered at the August 3, 2011, BESE meeting. But Pelican has not averred and nothing otherwise establishes that the August 3, 2011 meeting was not “open” to the public as required by La. R.S. 42:14. Lastly, insofar as the action taken by BESE on August 3, 2011, which was set forth in the notice of termination hand delivered to Pelican on August 3, 2011, Pelican has not alleged or otherwise established in its documentary attachments to the petition that BESE failed to comply with the OML’s requirements. There are no allegations or documents establishing that the August 3, 2011 meeting was conducted closed or without a quorum.
Our review shows that Pelican simply has not alleged any actions by BESE that are in violation of the OML. Accordingly, the trial court correctly concluded that Pelican has failed to state a cause of action for relief under the OML.
AMENDMENT OF PETITION
Pelican complains that the trial court erred by disallowing it the opportunity to amend its petition to state a cause of action. And while this appeal was pending, Pelican filed a motion to remand with this court requesting, in the alternative to a reversal of the trial court’s dismissal of its petition, an opportunity to “more specifically allege the unconstitutionality of the regulations.”
In light of our determination that BESE had the option to revoke and terminate Pelican’s charter under the terms of the Charter Contract or the procedure of Chapter 17 of Bulletin 126, incorporated into the Charter Contract by the Charter School Law, and chose to proceed according to Section 5.4.2, whether |17§§ 1701 and 1703 of Bulletin 126 are unconstitutional is inconsequential.[5] Therefore, we find that *451 the grounds of the objection cannot be removed by amendment of the petition. See La. C.C.P. art. 984; United Teachers of New Orleans v. State Bd. of Elementary and Secondary Educ., 2007-0031 (La.App. 1st Cir.3/26/08), 985 So.2d 184, 198. Thus, the motion to remand filed in this court is denied.
While Pelican has raised contentions in its appellate brief suggesting that BESE went into an “executive session” to consider whether or not to revoke the Abramson charter, Pelican has not suggested that BESE took final or binding action during an executive session or otherwise entered into an executive session as a subterfuge to defeat the purposes of the OML. Thus, because an amendment of the petition would be a vain and useless act, we find no error by the trial court in denying Pelican’s request to amend its petition.
DECREE
For these reasons, we affirm the trial court’s judgment, sustaining BESE’s peremptory exception raising the objection of no cause of action and dismissing Pelican’s claims. Appeal costs are assessed against plaintiff-appellant, Pelican Educational Foundation, Inc.
AFFIRMED; MOTION TO REMAND DENIED.
GUIDRY, J., concurs in the result.

. A charter is "the agreement and authorization to operate a charter school, which includes the charter contracts and exhibits, which incorporate the charter school application.” See § 103(E), appearing in Title 28, Education, of the Louisiana Administrative Code (LAC), Bulletin 126.

. See generally La. R.S. 17:3971-4001; see also § 103(H), Title 28, LAC, Bulletin 126, defining a charter school as "an independent public school that provides a program of elementary and/or secondary education established pursuant to and in accordance with the provisions of the Louisiana Charter School Law to provide a learning environment that will improve pupil achievement.” And La. R.S. 17:3973(2)(b)(v)(aa) defines a "Type 5” charter school as, among other things, "a preexisting public school transferred to the Recovery School District pursuant to [La.] R.S. 17:10.5 or 10.7 and operated as the result of and pursuant to a charter between a nonprofit corporation and [BESE].” See also § 107(E) of Title 28, LAC, Bulletin 126.

. Although in its petition Pelican averred that BESE had violated the Louisiana Administrative Procedures Act (APA), because BESE’s revocation and termination were based solely on the terms of Section 5.4.2 of the Charter Contract, no adjudication occurred such that provisions of the APA apply. See Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Bd., 2001-0185 (La.10/16/01), 797 So.2d 656, 662 n. 7 (for purposes of the APA, an adjudication is an agency proceeding that results in a disposition that is required to be made (by constitution or statute) after notice is given and a hearing is held; unless some statute or the constitution requires a hearing and notice, an agency action is not an adjudication for purposes of the act).

. Part I of Title 28, LAC, § 305(B) states in relevant part:
The president shall conduct [BESE] meetings and perform duties designated by [BESE] or by statute. The president shall *450 sign, on behalf of [BESE], contracts, agreements, and/or official documents approved by [BESE]. The president is authorized to make ad hoc decisions for [BESE] in emergency situations when [BESE] is not in regular or special session and where policies and statutes are silent. However, any such decisions, which constitute an obligation, official position, or action of [BESE], are subject to ratification by [BESE] at the next scheduled meeting. The president shall appoint members of standing and special committees of [BESE].
BESE suggests in its appellate brief that Da-stugue acted pursuant to her emergency powers under § 305(B) when she issued the letter suspending Pelican. Although the record fails to establish whether BESE was in regular or special session on July 15, 2011 when the letter was sent so as invoke the emergency power of the BESE president under § 305(B), Pelican has not asserted any claims challenging the efficacy of the BESE regulation.

. Based on the allegations of its supplemental petition and the attached termination notice. Pelican has conceded that the revocation and termination of its charter was action undertaken by the entire membership of BESE and not just by Dastugue in her capacity as president. Therefore, insofar as an amendment of its petition under La. C.C.P. art. 934, Pelican cannot factually allege a basis for a complaint that Part I of Title 28, LAC, § 305(B) may be unconstitutional or that Dastugue exceeded her authority in issuing the suspension since it has conceded that the entire membership of *451 BESE clearly ratified her action on August 3, 2011. See n.4, supra.