KUHN, J.
12Plaintiffs-appeIlants, Faron and Annette Clavier, individually and as the surviving parents of their deceased son, Casey Clavier, appeal the trial court’s judgment sustaining peremptory exceptions raising the objection of prescription and dismissing their claims against defendants-appel-lees, Dr. Richard Byrd, Our Lady of the Lake Hospital, Inc. (OLOL), and Pathology Group of Louisiana, APMC (PGL). Because we hold that plaintiffs’ petition fails to state a cause of action and, alternatively, that the matter is prescribed, we affirm the dismissal.
FACTUAL AND PROCEDURAL BACKGROUND
On October 22, 2009, Casey underwent a surgical procedure, performed by Dr. Byrd at OLOL, to address complications from Crohn’s colitis.[1] After the operation, Casey was placed in a recovery unit and then later moved to a regular room. On October 23, 2009, at approximately 2 a.m., Casey died in his room at OLOL. Dr. Byrd advised the Claviers of several possible causes of death. These included that Casey had: bled to death in his pelvis (which was the site where the operation had been performed); an adverse reaction to prescribed narcotics; a cardiac infarction or other cardiac event; or a pulmonary embo-lus. Because there was no obvious cause of death, Dr. Byrd requested that the Claviers allow an autopsy to be performed on Casey, and they consented.
Dr. Stephen Mason of PGL undertook a restricted, medical autopsy of Casey’s abdomen, pelvis, and chest, which was performed at OLOL. Although the results of the autopsy ruled out several suspected causes of Casey’s death, certain plausible cardiac events or an adverse reaction to narcotics were potential causes |sthat could not be eliminated. Dr. Byrd classified Casey’s death as “unknown” on the death certificate. •
On July 18, 2011, the Claviers filed this lawsuit, alleging that a medical review panel had reviewed Casey’s medical care and unanimously concluded the evidence did not support the conclusion that OLOL employees or Dr. Byrd failed to meet the applicable standards of care. Urging that the medical review panel’s conclusion was based on a lack of evidence to support their claim that over sedation/respiratory distress/respiratory failure, attributable to breaches in the standards of care that OLOL and Dr. Byrd owed to Casey, was the cause of his death, the Claviers claimed entitlement to damages for spoliation of evidence as a result of the actions and omissions of Dr. Byrd, OLOL, and PGL, naming each as a defendant in this litigation.
Dr. Byrd, OLOL, and PGL each filed a peremptory exception objecting to the timeliness of the Claviers’ claims for damages for spoliation. Collectively the defendants maintained that even if it were assumed that the Claviers had a viable cause of action for spoliation, their lawsuit was nevertheless untimely. After a hearing, the trial court agreed with the defendants, sustained the exceptions of prescription, and dismissed the Claviers’ petition. This appeal followed.
NO CAUSE OF ACTION
Initially we point out that this court may notice the peremptory exception *885 raising the objection of no cause of action on its own motion. See La. C.C.P. art. 927 B; Capital City Towing & Recovery, Inc. v. City of Baton Rouge, 97-0098 (La.App. 1st Cir.2/20/98), 709 So.2d 248, 251. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether |4the law affords a remedy on the facts of the pleading. A court must review the petition and accept all well pleaded facts as true, and the only issue is whether, on the face of the petition, plaintiffs are legally entitled to the relief sought. Pelican Educ. Found., Inc. v. Louisiana State Bd. of Elementary and Secondary Educ., 2011-2067 (La.App. 1st Cir.6/22/12), 97 So.3d 440, 444.
The plaintiffs, who are the parents of Casey, have filed this lawsuit separately from the medical malpractice lawsuit they have asserted against defendants Dr. Byrd and OLOL, which has yet to be tried.[2] They have also included PGL, individually and as employer of Dr. Mason, in this spoliation lawsuit.[3]
In this petition, the Claviers assert that the action of OLOL employees of unplugging a PCA pump (prescribed by Dr. Byrd to administer Casey’s narcotic intake), which resulted in the erasure of recorded data that would have shown the amounts of narcotic drugs that Casey had received subsequent to surgery, constituted intentional spoliation of the evidence by the hospital.[4] Additionally, the Claviers contend the performance of an autopsy without toxicology screens' constituted intentional spoliation of evidence by: Dr. Byrd, who did not expressly request toxicology screens; OLOL for reporting the death to East Baton Rouge Parish rather than Acadia Parish, the latter of which, it is alleged, would have required toxicology screens as part of an autopsy; PGL for the actions of Dr. Mason in failing to include toxicology screens in conducting the autopsy and to advise Dr, RByrd of such; and by PGL individually for failing to include toxicology screens where an adverse reaction to prescribed narcotics was a possible cause of death.
The theory of “spoliation” of evidence refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. A plaintiff asserting a claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence. Allegations of negligent conduct are insufficient. Barthel v. State, Dep’t of Transp. and Dev., 2004-1619 (La.App. 1st Cir.6/10/05), 917 So.2d 15, 20. Historically, when a litigant fails to produce evidence within his reach, the courts have applied a presumption that the evidence would have been detrimental to his case. See Randolph v. General Motors Corp., 93-1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026, writ denied, 95-0194 (La.3/17/95), 651 So.2d 276. The obligation or duty to preserve evidence arises from the foreseeability of the need for the evidence in the future. Dennis v. Wiley, 2009-0236 (La.App. 1st Cir.9/11/09), 22 So.3d 189, 195, writ denied, 2009-2222 (La.12/18/09), 23 So.3d 949. The failure to identify evidence that was intentionally destroyed to deprive its use where the defendant had a duty to collect such evidence is *886 detrimental to plaintiffs claim for spoliation. See Jackson v. Home Depot, Inc., 2004-1653 (La.App. 1st Cir.6/10/05), 906 So.2d 721, 728.
Initially, we note the Claviers have not alleged that at the time of the acts and alleged omissions of the defendants, litigation was pending or imminent. And the Claviers have not produced anything to support the conclusion that Casey’s death was caused by an adverse reaction or overdose of prescribed medication rather than as a result of a cardiac event, both of which were causes of death that were not | ^eliminated by the autopsy that was performed. Thus, the Claviers have not shown the existence of any evidence that was actually destroyed by the defendants.
Moreover, we conclude that none of the defendants owed a duty to the Claviers to collect the evidence they suggest is the subject of their spoliation claims. The Claviers have not cited any law that required Dr. Byrd, OLOL, Dr. Mason, or PGL to include toxicology screens as part of an autopsy; or for OLOL to require that a PCA pump not be disconnected so that its recorded data could be made part of the hospital’s record where no litigation was pending. Whether Dr. Byrd or OLOL breached their respective standards of care on these bases are ostensibly issues the Claviers will pursue in their medical malpractice claim for wrongful death and survival action damages and ai-e not proper issues before us in this spoliation claim.
Importantly, nothing precludes the Claviers from asserting entitlement to an application of the adverse presumption of spoliation in the medical malpractice lawsuit if they have met the requirements for its application. Thus, if the Claviers were permitted to assert a separate cause of action for spoliation against Dr. Byrd and OLOL at this time, it would create a plethora of problems. See Cedars-Sinai Med. Ctr. v. Superior Court, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511 (1998) (where in concluding a separate tort cause of action for intentional spoliation of evidence does not exist when the spoliation is committed by a party to the underlying action to which the evidence is relevant and the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action, the California Supreme Court pointed out numerous practical and procedural concerns including a strong policy against derivative tort remedies for litigation-related misconduct since such remedies undermine the desire for finality of ^adjudication; the existence of effective nontort remedies for spoliation of evidence, including the evidentiary inference that evidence destroyed by a party is unfavorable to that party; sanctions for abuse of discovery; punishment of attorneys who are involved; and criminal penalties).
Insofar as the spoliation claims against PGL, individually and for the actions of Dr. Mason neither of whom are parties to the medical malpractice action, we likewise find the Claviers have failed to assert a duty to include toxicology screens in the restricted, medical autopsy Dr. Mason performed at OLOL pursuant to an order from Dr. Byrd. Thus, the Claviers are unable to prove the requisite breach of duty to support the imposition of intentional spoliation damages against PGL. See Jackson v. Brumfield, 2009-2142 (La.App. 1st Cir.6/11/10), 40 So.3d 1242, 1243 (two essential elements of proof under the duty-risk analysis of delictual liability are the existence of a legal duty of the alleged tortfeasor toward the injured person and the breach of such duty by the alleged tortfeasor).
Additionally, despite having averred the defendants’ actions were done *887 “intentionally,” nothing in the Claviers’ statements of facts supports that characterization. As to Dr. Byrd, the Claviers have claimed that Dr. Byrd intentionally concealed, lost, destroyed, or otherwise disposed of critical physical evidence; failed to notify OLOL employees that he suspected an adverse or other reaction to narcotics so as to warn them to preserve any information on the PCA pump; and that he should have known that a toxicology screen would not be included when OLOL performed the autopsy he ordered. While these statements are assumed as true for purposes of examination of an objection of no cause of action, |sthey fail to aver any action on Dr. Byrd’s part was for the purpose of depriving the Claviers the use of that information for litigation.
As to OLOL, the Claviers have merely contended that OLOL employees unplugged the PCA pump. Nothing in these allegations indicates that OLOL employees unplugged the device for the purpose of erasing the information so that the Claviers would be unable to prove the amounts of prescribed narcotics Casey received. Similarly, they have averred that OLOL did not report Casey’s death to the coroner of Acadia Parish but instead advised East Baton Rouge Parish, suggesting that a report to the former would have resulted in an autopsy that included toxicology screens. But assuming these allegations as true, there are no facts that OLOL’s report to East Baton Rouge Parish was for the purpose of avoiding an autopsy, which included toxicology screens. Thus, nothing in their petition supports a theory of intentional spoliation insofar as OLOL.
The Claviers have likewise failed to aver any intentional conduct on the part of either Dr. Mason so as to impose liability for spoliation against PGL as his employer or against PGL for its actions. As to Dr. Mason, the Claviers alleged that he failed to advise Dr. Byrd that he would not perform toxicology screens in the autopsy although Dr. Byrd indicated that an adverse reaction to prescribed narcotics was a possible cause of death and that his performance of an autopsy without drug screens under these circumstances was intentional spoliation. Nothing in the Claviers’ factual allegations avers that Dr. Mason knew of pending litigation and failed to collect toxicology screens for the purpose of depriving the Claviers of the data they hoped would prove their theory of the cause of Casey’s death.
|9The Claviers have also averred that PGL failed to notify physicians at OLOL that the performance of an autopsy by its physicians would not include toxicology screens. But again, nothing in their allegations of fact claims that PGL, knowing of an existing lawsuit, intentionally failed to procure the evidence for which the Claviers are looking. As such, there are no facts to support a theory of intentional spoliation by PGL.
Accordingly, we conclude that the law fails to extend a remedy to the Claviers for damages for the intentional spoliation of evidence. Thus, the Claviers have failed to state a cause of action.
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed. La. C.C.P. art. 934; Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 2011-2254 (La.App. 1st Cir.7/10/12), 97 So.3d 595, 600.
*888 The Claviers urge that we allow them an opportunity to amend their petition to state a cause of action for either intentional or negligent spoliation. But the Claviers have offered, and we have not found, any duty that any of the defendants owed to them to collect data to support their theory that the cause of Casey’s death was an adverse reaction to prescribed narcotics rather than a cardiac event. And it is undisputed that at the time of the actions and omissions that the Claviers claim constituted intentional spoliation, there was no pending or imminent litigation. Therefore, an amendment cannot remove the grounds for the objection.
And because a plaintiff asserting a claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence, see Barthel, 917 So.2d at 20, there is no set of facts that would permit the Claviers to claim entitlement to damages for negligent spoliation.[5] As such, they are not entitled to leave to amend their petition to assert such a claim.
PRESCRIPTION
As an alternative basis for our affir-mance of the trial court’s dismissal of the Claviers’ claims for intentional spoliation damages, we address the merits of the defendants’ exceptions of prescription and conclude, as the trial court did, that even if the Claviers had a cause of action for spoliation, their petition was untimely. Regardless of whether the spoliation claims (as distinguished from the Claviers’ claims for damages based on medical malpractice) were considered as arising out of patient care or a delictual matter, the trial court correctly determined that it was untimely.[6]
Ordinarily, the party pleading prescription bears the burden of proving the right to bring the claim has prescribed. However, when the face of the petition reveals that the plaintiffs right has prescribed, the burden shifts to the plaintiff to demonstrate prescription was interrupted or suspended. Barber v. Employers Ins. Co. of Wausau, 2011-0357 (La.App. 1st Cir.6/28/12), 97 So.3d 454, 464. At the | ntrial of a peremptory exception, evidence may be introduced to support or controvert the defense of prescription, if its grounds do not appear from the petition. La. C.C.P. art. 931. If evidence is introduced at the hearing on the peremptory exception, the trial court’s findings of fact are reviewed under the manifest error-clearly wrong standard of review. See Straub v. Richardson, 2011-1689 (La.App. 1st Cir.5/2/12), 92 So.3d 548, 552, writ denied, 2012-1212 (La.9/21/12), 98 So.3d 341. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State, *889 Dep’t of Transp. and Dev., 617 So.2d 880, 882-83 (La.1993).
According to La. R.S. 9:5628 A, which sets for a time limitation for the institution of medical malpractice actions,
No action for damages for injury or death against any physician ... [or] hospital ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect.
Article 3492, which governs tort claims, provides, “Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.”
In support of the exception of prescription, the defendants introduced the deposition testimony of Drs. Byrd and Mason. In his deposition testimony, taken on March 24, 2009, Dr. Byrd explained that because Casey complained of pain despite having had the prescribed morphine administered, he put Casey on a PCA pump.[7] 11gDr. Byrd testified that on the day after Casey’s death he asked OLOL nurses for the PCA pump data, explaining that the pump documents how many times a patient requests medicine versus how many times he receives it. He stated that he was advised that the machine had been turned off and unplugged, and that the data was, therefore, lost. In association with his autopsy order, because he expected that having prescribed narcotics to Casey, the patient would test positive, Dr. Byrd testified that he did not specifically request any toxicology screens. He also stated that when he ordered the procedure, he did not know whether a standard autopsy at OLOL would include a toxicology study.
According to Dr. Mason’s deposition, taken on March 18, 2009, he worked as a pathologist for PGL, a private consultant who had a contractual relationship with OLOL. He explained that all the autopsies PGL performed at OLOL were medical autopsies, i.e., a specific protocol for less than a full autopsy, which was restricted to examination of the abdomen, pelvis, and chest, and that an expansion of an autopsy beyond that would only be done at the request of the clinician and family. Dr. Mason testified that no one at PGL was able to perform forensic autopsies, which could only be undertaken by a coroner.
Dr. Mason stated that as a result of the autopsy he conducted, he was able to eliminate abdominal hemorrhage, pulmonary embolus, and myocardial infarction as causes of death, but that he could not rule out all other plausible cardiac events or an adverse reaction to narcotics as causes of death. Although Dr. Mason was aware that Dr. Byrd had indicated an adverse reaction to narcotics was a possible cause of death, and that the medical autopsy would not provide information permitting him to rule that out, he did not contact the medical examiner.
| ^Regardless of which of the parties bore the burden of proof, based on the deposition testimony, the evidence supports the trial court’s factual finding that by March 24, 2010, the date of Dr. Byrd’s deposition, the Claviers had actual knowl-¿dge that OLOL employees had unplugged the PCA pump, resulting in the loss of the recorded data. The evidence also supports *890 the trial court’s factual finding that by no later than March 24, 2010, the Claviers were aware that a medical autopsy had been performed on Casey, which did not include toxicology screens. Thus, the trial court was not manifestly erroneous in concluding that the Claviers failed to file their lawsuit against OLOL within a year of actual knowledge that OLOL employees had allegedly spoliated the evidence associated with the PCA pump and that toxicology screens had not been performed at either Dr. Byrd’s request or as standard practice by either PGL or OLOL. Thus, whether any spoliation causes of action that the Claviers may have had were considered as medical malpractice claims under La. R.S. 9:5628 A, or delictual actions under La. C.C. art. 3492, the trial court correctly concluded they were prescribed.
The Claviers urge that the trial court erred as a matter of law because them claims are delictual causes of action and, therefore, prescription commenced to run from the day injury or damage was sustained rather than the date of the act or omission as in the case of a medical malpractice claim. They suggest that under Article 3492, prescription against the defendants could not have commenced until April 6, 2011, the day that the medical review panel rendered an unfavorable ruling for their allegations of medical malpractice. Thus, they claim entitlement to an application of contra non valentem.
Although La. C.C. art. 3467 provides that “prescription runs against all persons unless exception is established by legislation,” the jurisprudential doctrine of contra non valentem is an exception to this statutory rule. The courts have recognized four factual situations in which contra non valentem prevents the running of liberative prescription including where the cause of action is neither known nor reasonably knowable by the plaintiff even though the plaintiffs ignorance is not induced by the defendant. Marin v. Exxon Mobil Corp., 2009-2368 (La.10/19/10), 48 So.3d 234, 245. This is commonly known as the discovery rule.
Here, the Claviers are asserting that they are entitled to an application of the discovery rule. The doctrine of contra non valentem only applies in exceptional circumstances. A plaintiff is deemed to know what he can by reasonable diligence learn. Prescription begins to run when the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant; ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm that delays commencement of prescription. Prescription runs from the date on which a plaintiff first suffers actual and appreciable damage even though he may thereafter come to a more precise realization of the damages he has already incurred or incurs further damage as a result of the completed tortious act. See Marin, 48 So.3d at 245-46.
Clearly, by March 24, 2010, the date of Dr. Byrd’s deposition testimony, the Claviers had sufficient facts — i.e., that the PCA pump had been unpluggéd and, therefore, the recorded data was spoliated and that neither Drs. Byrd nor Mason had conducted toxicology screens and that neither was required to do so under the policy |1Bof restricted medical autopsies conducted by PGL at OLOL and, therefore, that such toxicology information was spoliated — to commence tolling of the prescriptive period under Article 3492. By the March 24, 2010 deposition, the Claviers were cognizant of the actual and appreciable damage they had suffered by the alleged spoliation of evidence by OLOL personnel as well as by Dr. Byrd and PGL individually and for the actions of Dr. Mason. Thus, as of *891 March 24, 2010, the Claviers had a reasonable basis for filing suit against OLOL, Dr. Byrd, and PGL for any spoliation claims they may have had. Accordingly, regardless of who bore the burden of proof, we find no error in the trial court’s conclusion that any claim for spoliation that the Claviers may have had prescribed by March 24, 2011, whether under an application of La. R.S. 9:5628 or Article 3492. Therefore, on July 18, 2011, when they filed this lawsuit, the Claviers’ claim was already prescribed.
DECREE
Finding on our own motion that the Claviers’ petition fails to state a cause of action entitling them to relief and, furthermore, concluding in the alternative that even if the Claviers had an independent cause of action for spoliation, their petition filed on July 18, 2011, seeking damages from OLOL, Dr. Byrd, and PGL was untimely, we affirm the trial court’s dismissal of their petition. Appeal costs are assessed against plaintiffs-appellants, Faron and Annette Clavier.
AFFIRMED.

. Specifically, Dr. Byrd performed a resection of a rectal stricture.

.The Claviers filed a separate petition for wrongful death and survival action damages on July 18, 2011, naming OLOL, Dr. Byrd, and his insurer as defendants, which was allotted to another division in the district court.

. Dr. Mason has not been named a party defendant in this litigation.

. It is undisputed that a PCA pump is a patient controlled device that administers controlled amounts of a medication over intervals of time.

. We find the Claviers reliance on Harris v. St. Tammany Parish Hosp. Service Dist. No. 1, 2011-0941 (La.App. 1st Cir.12/29/11), 2011 WL 6916523 (unpublished), writs denied, 2012-0585, 2012-0678 (La.4/20/12), 85 So.3d 1275, 85 So.3d 1277, misplaced. In a plurality opinion, this court affirmed the trial court's judgment, incorporating the jury's rejection of any relief to the plaintiff on the basis of spoliation. Therefore, any statements that could be construed to suggest the existence of a separate cause of action for negligent spoliation were merely dicta. The Harris plurality held that where the plaintiff failed to show the defendant had a duty to preserve evidence, there is no entitlement to recovery for spoliation damages, which is in conformity with our holding today.

. In our ruling today, we express no opinion as to the timeliness of the Claviers' petition for wrongful death and survival action damages arising out of alleged medical malpractice.

. Dr. Byrd prescribed .5 mgs of Dilaudid every 15 minutes with a lockout of 2 mgs per hour.