WHIPPLE, C.J.,
concurring in part and dissenting in part.
| TWhile I agree with the majority that the trial court’s grant of summary judgment in favor of Hi Nabor should be reversed, I disagree with the majority’s decision to affirm the denial of Carter’s motion for adverse inference due to spoliation.
Spoliation of evidence generally refers to an intentional destruction of. evidence for the purpose of depriving opposing parties of its use.[1] McCleary v. Terrebonne Par *708 ish Consolidated Government, 2009-2208, p. 2 (La.App. 1st Cir.9/30/10), 2010 WL 3822225 (unpublished opinion), writ denied, 2010-2807 (La.2/11/11), 56 So.3d 1003. The theory of spoliation of evidence has its roots in the evidentiary doctrine of “adverse presumption,” which allows for a jury instruction to be given that the destroyed evidence is presumed to have contained information detrimental to the Isparty who destroyed the evidence unless such destruction is adequately explained. Robertson v. Frank’s Super Value Foods, Inc., 2008-592 (La.App. 5th Cir.1/13/09), 7 So.3d 669, 673.
As noted in the majority opinion, the evidentiary doctrine of “adverse presumption” was applied by the Louisiana Supreme Court in Varnado v. Banner Cotton Oil Co., 126 La. 590, 590-592, 52 So. 777, 777-778 (1910), wherein the Supreme Court applied the maxim, omnia praesu-muntur contra spoliatorem, holding that the refusal of the managers of a corporation to produce the corporate books to interested stockholders justified a court and jury to draw “the most unfavorable inference, consistent with reason and probability, as to the nature and effect of the evidence which the opposite party has been precluded from using and examining as a means for the discovery of the truth.”
Thus, as previously recognized by this court, when a litigant fails to produce evidence within his reach, a presumption that the evidence would have been detrimental to his case is applied, unless the failure to produce the evidence is adequately explained. Paradise v. Al Copeland Investments, Inc., 2009-0315 (La.App. 1st Cir.9/14/09), 22 So.3d 1018, 1027; Randolph v. General Motors Corporation, 93-1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026, writ denied, 95-0194 (La.3/17/95), 651 So.2d 276. One explanation for failure to produce evidence that has been deemed reasonable is the situation where suit has not been filed and there is no evidence that a party knew suit would be filed when the evidence was discarded, such that the need for the evidence was not foreseeable. Under such circumstances, the theory of an adverse presumption for spoliation of evidence does not apply. See generally Higgins v. Richard, 2008-2504, p. 4 (La.App. 1st Cir.6/12/09), 2009 WL 2486892 (unpublished opinion).
|aIn the instant case, it is undisputed that Hi Nabor knowingly allowed the purging of a large portion of the video tape, intentionally electing to preserve only a short portion of the tape depicting the scene of the fall for the few seconds immediately preceding, during, and subsequent to Carter’s fall. In justification and as an explanation of its actions, Hi Nabor’s corporate representative, Jim Crisasi, testified that the video tape surveillance system was designed to override, and thereby “purge,” automatically after thirty days; however, because Hi Nabor had notice of Carter’s fall prior to the automatic purging date, the video tape was reviewed and a portion of the video tape of that particular date, i.e., the portion showing Carter approach the deli area, then slip and fall, was retained.[2] According to Crisasi, Hi Nabor *709 generally only maintained video surveillance from the time period during which the incident occurred. Crisasi admitted that Hi Nabor elected to not retain the video footage of the area and circumstances preceding Carter’s fall, but claimed that it did so because Carter had reportedly slipped on water, which he claims would not be visible on tape. However-, Crisasi conceded that the video tape was reviewed by Hi Nabor and further conceded that if Carter had slipped on a grape, as reported by Spillers, the object causing the fall, ie., a grape on the floor, would have “possibly” been visible' on the surveillance tape. He also acknowledged that if surveillance of the entire day had been retained, it potentially would have identified how that condition came to be on the floor, ie., whether a customer had dropped a grape. Importantly, Crisasi admitted that the deletion of the video precluded a showing of what caused the condition on the floor.
The record further reflects that: Hi Na-bor had notice of the fall when it occurred on April 27, 2010; Hi Nabor was aware that Carter desired to file a claim, at least as of April 28, 2010, when he called the store and spoke to Ms. Walker; Hi RNabor completed and submitted a detailed incident report, including witness accounts, to its insurer, Liberty Mutual; and Hi Nabor was put on notice by certified letter from Carter’s attorney, dated May 19, 2010 and received May 21, 2010, that Carter had retained counsel and was represented “in any and all matters concerning a slip and fall which occurred at .[their] store on April 27, 2010.” Notably, all of the above, including Hi Nabor’s certified notice from Carter’s counsel, was received within the thirty-day period preceding Hi Nabor’s automatic purge date for the video surveillance at issue.
Nonetheless, the trial court refused to enter an adverse inference, (or a jury instruction on such), finding that Hi Nabor’s explanation for its failure to preserve the evidence was adequate because Hi Nabor had- no knowledge of a lawsuit or any indication that one would be' filed. On appeal, Carter contends that the trial court erred in so ruling as the record does not support these underlying factual findings and conclusions. Thus, he contends that he is entitled to a jury instruction on the issue of adverse presumption as well as the application of an adverse evidentiary inference and presumption in his favor in the proceedings before the trial court. I agree.
On review of the record herein, I would find, merit to Carter’s- contention that the record does not support the trial court’s factual finding that Hi Nabor’s actions were justified or excusable because it “had no knowledge of a lawsuit pending or an indication that one would be filed.” As the record reflects, Hi Nabor had notice of the fall when it occurred on April 27,- 2010; Hi Nabor was aware that Carter wished to file a claim, at least as of April 28, 2010, when he called the store and spoke to Ms. Walker; Hi Nabor completed and submitted a detailed incident report, including witness accounts, for its insurer, Liberty Mutual; and Hi Nabor was put on notice by certified letter from Carter’s attorney dated May 19, 2010, and received May 21, 2010, that Carter had retained counsel and was represented “in any .and all matters [ Rconcerning a slip and fall which occurred at [their] store on April 27, 2010.” All of the above information, including Hi Na-bor’s certified notice from Carter’s counsel, was received within, thirty days, of the incident, well within time to retain a sufficient portion of video surveillance. Thus, *710 in my view, the record clearly establishes that Hi Nabor was, in fact, immediately aware of the accident, and was reasonably put on notice, as a merchant, that a subsequent claim for damages arising out of the incident was forthcoming or foreseeable. Considering the record before us, I would find that the trial court erred in determining otherwise.[3]
I would also find merit to Carter’s contention that the record does not support the trial court’s conclusion that Hi Nabor provided an “adequate explanation,” as would preclude a jury instruction on or application of adverse inference, considering the evidence of record on this issue. In justification of its decision to purge the videotape, Hi Nabor’s explanation to the trial court was that it made the decision to do so because it felt that water would not be seen by the video camera. Therefore, Hi Nabor explained, there was no “cause” to keep the portion of tape preceding the fall. However, the video itself lends no support for such an explanation and, in fact, preponderates in favor of a different conclusion.
As a merchant, it can be assumed that a defendant supermarket is aware of slip and fall lawsuits and that one of the elements in stating a cause of action against the merchant is the length of time that the dangerous condition existed on the floor and whether the merchant knew, or should have known, of the dangerous | (¡condition. See LSA-R. S. 9:2800.6. Hi Nabor does not dispute that it was in possession and control of the tape at all times and actually reviewed it with notice of Carter’s pending claim. As the record further shows, Hi Nabor unilaterally decided that there was “no cause” to retain the portion of the tape preceding Carter’s fall, and that it was justified in its decision to only retain seconds of footage before Carter’s fall.
However, based on the record herein, and, in particular, the retained video footage itself, I agree with Carter that the factual findings underlying the trial court’s ultimate refusal to grant a jury instruction on spoliation or to apply an adverse presumption are not borne out by the record. Considering the tape alone, Hi Nabor’s explanation that it deleted the critical video tape because water would not be visible on the video tape is inadequate on the record before us, particularly in light of the fact that: (1) the video footage introduced herein, which Crisasi testified he viewed, clearly shows Carter stepping onto a small dark object on the floor prior to his fall; and (2) an eye witness to the fall had stated that the object was a grape. In sum, given the fact that Hi Nabor undis-putedly reviewed the video prior to purging, Hi Nabor’s claim that it destroyed the video of the critical time before the accident on the basis that it believed Carter slipped on water on the floor and water on the floor would not be visible on tape is belied by the retained surveillance footage itself, which shows the area prior to Carter’s fall and clearly depicts a dark visible object on the floor.
Thus, I would find merit to Carter’s claim that the trial court erred in its underlying findings and, accordingly, abused *711 its discretion in refusing to grant the requested motion for a jury instruction and in refusing to enter or apply, as an eviden-tiary matter, the adverse inference sought by Carter herein. Instead, after reviewing the videotape, I note that the video surveillance of this incident that Hi |7Nabor :did choose to retain clearly shows Garter stepping on a small dark object and slipping. Thus, on the evidence before us, I would conclude that the explanation that the pertinent footage at issue herein was not.retained because water would not be seen by the camera is neither credible nor supported in the record herein. Accordingly, while the majority is correct that interlocutory judgments are subject to further review by the trial court, under the facts of this case, Hi Nabor’s explanation that it had no “cause” to preserve video prior to Carter’s fall, because it assumed water would not be visible to the camera, appears to be inadequate, pretextual and unreasonable under the circumstances and facts as developed in the record thus far. See Salone v. Jefferson Parish Department of Water, 94-212 (La.App. 5th Cir.10/12/94), 645 So.2d 747, 750-751. As such, I would find that the trial court erred in refusing the requested jury instruction and in refusing to apply an adverse inference based on spoliation when determining the issues before the court. For these reasons, I dissent from the decision of the majority to affirm the portion of the September 12, 2012 judgment that denied Carter’s motion for adverse inference.
With regard to the March 5, 2013 judgment granting Hi Nabor’s motion for summary judgment, I agree with the majority that the trial court erred in rendering summary judgment in Hi Nabor’s favor as a matter of law because genuine issues of material fact remain. *
As the majority notes, Velta Walker was the store supervisor at Hi Nabor that day. Ms. Walker testified that Hi Nabor had a policy in place that floor inspections were routinely performed every thirty minutes and logged on a floor inspection sheet. Ms. Walker identified Kedron Franklin as the employee who would have been responsible for performing the sweeps around the floor at the time of the incident. Although the floor inspection sheet indicates that a spill was swept up at 6:30 p.m. Isthat day, Ms. Walker testified that Mr. Franklin had cleaned up a spill on the other side of the store at that time prior to this incident. She further testified that if Mr. Franklin began his inspection at 6:30 p.m. and had to clean up a spill on the other side of the supermarket, it is possible that he had not reached that area by 6:32 p.m.
Moreover, the evidence of record herein shows that it had been at least one hour since Kedron Franklin had inspected the area where the grape was shown on the floor and where Carter fell. Moreover, despite Hi Nabor’s policy that á “floor sweep” be performed every thirty minutes, Regina Chiszle, a Hi Nabor employee working behind the deli counter, testified that it had been at least an hour since she had seen Franklin near the area where Carter fell. As the majority recognizes, though the time period need not be specific in minutes or hours, constructive notice can be shown to exist where the claimant proves the condition existed for some time period prior to the fall. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, 1084-1085.[4]
*712 In the instant case, there are issues of material fact as to whether Hi Nabor had actual or constructive notice of the unreasonably dangerous condition, which cannot be resolved without weighing the evidence and making credibility determinations. Thus, summary judgment is not appropriate. Accordingly, I agree with the decision of majority that the March 5, 2013 judgment should be reversed and the matter remanded for further proceedings.
For these reasons, I respectfully concur in part and dissent in part.

. However, this court has also previously alluded to a negligence theory of spoliation when addressing the application of an adverse presumption for spoliation of evidence. Paradise v. Al Copeland Investments, Inc., 2009-0315 (La.App. 1st Cir.9/14/09), 22 So.3d 1018, 1027. Further, in addition to the evi-dentiary doctrine of adverse presumption, some jurisprudence has also recognized a cause of action in tort for damages based on spoliation of evidence, and some courts have recognized such a cause of action based on either intentional spoliation or negligent destruction of evidence. See Harris v. St. Tammany Parish Hospital Service District No. 1, 2011-0941, 2011-0942 (La.App. 1st Cir.12/29/11), 2011 WL 6916523 (unpublished opinion), writs denied, 2012-0585, 2012-0678 (La.4/20/12), 85 So.3d 1275, 1277, McCleary v. Terrebonne Parish Consolidated Government, 2009-2208 (La.App. 1st Cir.9/30/10), 2010 WL 3822225 (unpublished opinion), writ denied, 2010-2807 (La.2/11/11), 56 So.3d 1003, and Robertson v. Frank’s Super Value Foods, Inc., 2008-592 (La.App. 5th Cir. 1/13/09), 7 So.3d 669, 673 (wherein the court noted that this cause of action has been recognized as the "tort of impairment of a civil claim”).
For a discussion of the distinction between the evidentiary doctrine of adverse presumption for spoliation of evidence and the cause of action in tort, see Robertson, 7 So.3d at 673. See also Clavier v. Our Lady of the Lake Hospital Inc., 2012-0560 (La.App. 1st Cir. *708 12/28/12), 112 So.3d 881, 885-886, writ denied, 2013-0264 (La.3/15/13), 109 So.3d 384, wherein one panel of this court astutely cautioned that allowing a party to assert a separate cause of action for spoliation against a party to the underlying action, where other remedies such as the application of an adverse evidentiary presumption are available, would create "a plethora of problems.” The Louisiana Supreme Court has not yet spoken as to the existence of a separate cause of action in tort based on spoliation of evidence. Robertson, 7 So.3d at 673.

. Crisasi testified that when they elect to maintain video tape surveillance, they actual *709 ly “bum” the retained portion to a compact disk.

. See also Robertson v. Frank’s Super Value Foods, Inc., 7 So.3d at 675, n. 3, where this court noted:
It has been held in other jurisdictions that a duty to preserve evidence can arise in the absence of notice of suit if the spoliating party acted to protect itself. The duty to preserve evidence arises from the foreseeability of the need for the evidence and not necessarily from notice of suit. To hold otherwise would encourage a party to avoid liability by destroying evidence as quickly as possible. 101 A.L.R.5th 61, § 20; County of Solano v. Delancy, 264 Cal.Rptr. 721 (App. 1st Dist.1989). [Emphasis added.]

. Although the Supreme Court in White interpreted the version of LSA-R.S. 9:2900.6 prior to its amendment by 1996 La. Acts, 1st Ex. Sess., No. 8 § 1, eff. May 1, 1996, the requirement in the statute that the plaintiff prove that the condition existed for "such a period *712 of time” was not changed by the 1996 amendments. Thus, the analysis in White regarding the temporal element of LSA-R.S. 9:2800.6 is equally applicable to the instant case. See Williams v. Shoney’s, Inc., 99-0607 (La.App. 1st Cir.3/31/00), 764 So.2d 1021, 1024 n. 3.